438 So.2d 374 (1983)
Oscar MASON, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 60703.
Supreme Court of Florida.
September 8, 1983.
Rehearing Denied October 27, 1983.
*376 Jerry Hill, Public Defender, and W.C. McLain and Samuel R. Mandelbaum, Asst. Public Defenders, Tenth Judicial Circuit, Bartow, appellant.
Jim Smith, Atty. Gen. and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
ADKINS, Justice.
We have for review an order by a circuit court imposing the death penalty upon appellant, Oscar Mason, Jr., (hereinafter appellant). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
In the early morning hours of March 19, 1980, eleven-year-old Missy Chapman woke her two brothers, telling them that something was the matter with their mother, Linda Sue Chapman, who lay in bed making choking sounds. Mrs. Chapman, who had been stabbed, died before the police or an ambulance arrived. None of the children reported having seen or heard anyone in their home the night of the killing.
A few days after the killing, Missy contacted a detective working on the case and told him that she had seen her mother being stabbed and had acted asleep until the man left the house. Fear that the killer would return had kept her from disclosing what she saw, claimed Missy. She described the assailant as a skinny black male, seventeen to nineteen years old, with short, dark hair. At a later deposition, however, Missy stated that she could not "actually see what [the killer] looked like." She was also unable, at a line-up or from photographs, to identify appellant or anyone else as the killer. At trial, nevertheless, Missy pointed out appellant, stating that she was "sure" he was her mother's murderer.
Two of appellant's fingerprints were found on the siding of the Chapman home, but none were found inside. A state's witness also testified that in his opinion, hairs found at the scene were appellant's.
At trial, the judge held admissible evidence concerning appellant's conviction for a rape and robbery committed two days after the Chapman murder. The collateral crime evidence was found relevant to the issue of identity on the basis of the similarity of the modus operandi used in each instance.
Appellant was found guilty of first-degree murder and in accordance with the jury's recommendation, sentenced to death. This appeal followed.
Appellant first argues that the trial court erred in admitting evidence of "an unrelated rape and burglary incident ... purportedly to prove identity." The collateral crime evidence, which was admitted pursuant to and in compliance with section 90.404, Florida Statutes (1979), was introduced only to show bad character or propensity, and showed nothing unique or unusual about him or his supposed modus operandi, asserts appellant. We disagree.
There are, as appellant notes, several distinctions between the two crimes. For example, one was a homicide, the other a rape; one home was ransacked and robbed, the other was not; the knife used in one crime was taken from a kitchen drawer, the other from a kitchen sink, and so on. Especially important, states appellant, are the dissimilar physical descriptions of the attackers given by the state's witness in each case.
There are, however, many similarities between the crimes. They occurred within two days and eight-tenths of a mile of each *377 other. In both cases the attacker entered the home through a window, armed himself with a knife from the kitchen and assaulted a woman in her bedroom. One victim was stabbed through the heart while the other was verbally threatened with the same, and a towel was found in the bedroom and outside near the points of entry at both locations. Finally, appellant's fingerprints were found at both scenes.
In Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), this Court held that "evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion." 110 So.2d at 663. The similar facts here were intended to show that the same modus operandi was used in the incidents, which would be relevant to the identity of Mrs. Chapman's killer.
In Drake v. State, 400 So.2d 1217 (Fla. 1981), we explained what is required for similar facts to be admissible to show a mode of operation and, hence, identity:
The mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared. A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations. Given sufficient similarity, in order for the similar facts to be relevant the points of similarity must have some special character or be so unusual as to point to the defendant.
400 So.2d at 1219.
There are enough identifiable points of similarity in the cases here being compared, and they are unusual enough, that the trial court was warranted in permitting the introduction of the evidence. We will not disturb its ruling admitting the testimony regarding the rape and robbery.
Appellant next argues that certain comments made by the prosecutor during both the guilt and penalty phases of his trial constituted fundamental error. In closing argument at the guilt phase, the prosecutor warned the jury that if appellant were turned loose "he is going to do two days later ... just what he did two days after March the 18th"  [i.e. rob and rape]. In closing argument during the penalty phase of the trial, the prosecutor stated that appellant "has established a very, very clear pattern of criminality" and "absolutely cannot be rehabilitated." The comments were so prejudicial, claims appellant, that he is entitled to a new trial.
In Blair v. State, 406 So.2d 1103 (Fla. 1981), citing several other cases, we refused to order a new trial despite allegedly improper remarks by a prosecutor. The remarks were not "of such a nature so as to poison the minds of the jurors or to prejudice them so that a fair and impartial verdict could not be rendered," did not "materially contribute" to the conviction, were not "so harmful or fundamentally tainted so as to require a new trial," and were not so inflammatory as to "have influenced the jury to reach a more severe verdict of guilt than it would have otherwise." 406 So.2d at 1107 (citations omitted).
The observations in Blair, lead us to conclude that although the comments of which appellant complains might warrant reversal in some cases, they do not here. Compelling evidence of appellant's guilt was presented during his trial, and the aggravating factors found applicable at sentencing significantly outweighed those in mitigation. We do not believe that the statements contributed materially to the verdict or the recommended sentence.
Also worth noting is that appellant's attorney objected to the statement made during the guilt phase of the trial, the court sustained the objection, and the jury was instructed to disregard the comment. While such an instruction alone does not eliminate fundamental error, it is further evidence that the relatively immaterial comment does not require a reversal. As for the statement made during the penalty phase, it was never objected to and so the *378 matter was not preserved for appellate review. See Clark v. State, 363 So.2d 331 (Fla. 1978). Had it been preserved, we would put it in the same category as the statement made during the guilt phase.
Appellant next alleges that the evidence identifying him as Mrs. Chapman's killer was insufficient and so the trial court erred in denying his motion for judgment of acquittal. Appellant contends that Missy Chapman's in-court identification was made under blatantly suggestive conditions and conflicted with prior statements that she had made to the police, that there was no evidence that his fingerprints found on the outside of the Chapman home were not placed there some time before the murder, that the comparison test which identified hairs found on a towel outside the house as his was scientifically unsound, and that there was no evidence of how his hairs ended up on the towel or how the towel ended up outside the house.
We agree with appellant that Missy Chapman's identification of him as the assailant has little credibility. Before trial she stated that when the murderer was in the bedroom, his back was towards her and that she could not "actually see what he looked like." At a line-up held one week after the killing Missy failed to identify appellant as the killer and when photographs of those in the line-up were later shown to her she again failed to pick him out. Finally, at trial, almost one year after the murder, Missy identified appellant as the man that she had seen. He was, however, the only black man at counsel's table and she had been informed that the man charged with killing her mother would be in the courtroom. The courtroom conditions were too suggestive, and her prior attempts too unsuccessful, to give much credence to Missy's identification of appellant.
The other evidence, however, was not so flawed. The fingerprints found at the scene were identified as appellant's and they were on the sill of the window through which the killer evidently entered the house. Appellant's speculation that the prints could have been put there before the night of the killing does not affect the relevance of that evidence; it simply reflects that the jury may give the prints as much or little probative value as it sees fit.
The same is true of the evidence regarding the hairs. They were identified as appellant's and were on a piece of towel matching the description of a towel which Missy said that her mother had used the night of the murder. Why Missy did not awaken as the towel was ripped and how the towel got outside may be questions which the jury considered in weighing the evidence, but they do not destroy its relevance.
Finally, as previously noted, the collateral crimes evidence was relevant and its admission was not improper. Thus, in view of the foregoing, there was sufficient evidence to support the trial court's denial of appellant's motion for judgment of acquittal.
Appellant's fourth point on appeal is that the trial court erred, at the sentencing phase of the trial, by finding applicable the aggravating circumstance that he had previously been convicted of another felony involving the use or threat of violence to the person. See § 921.141(5)(b), Fla. Stat. (1979). While some of the prior convictions on which the trial court relied will not support such a conclusion, two certainly will. Appellant's prior convictions for attempted murder and rape warranted application of the aggravating factor in question.
The fifth issue raised is whether the presence of the victim's three children during the murder warranted the finding that appellant created "a great risk of death to many persons." See § 921.141(5)(c), Fla. Stat. (1979). We have held that three other people do not qualify as "many persons," see Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981), and so that particular aggravating circumstance was not applicable in the case at bar.
We do agree, however, with the trial court's finding that this murder was heinous, *379 atrocious, and cruel. See § 921.141(5)(h), Fla. Stat. (1979). Mrs. Chapman's son, Westley, testified that when he went to check on his mother she was first looking at the ceiling and then turned to look at him, all the while making choking and gurgling sounds. A medical examiner testified that the victim probably lived from one to ten minutes after being stabbed, that the sounds that Westley heard were of Mrs. Chapman choking on her own blood, and that she was probably aware of her impending death.
The manner in which Mrs. Chapman died, sets this crime apart from the norm of capital felonies. See State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). She was not killed quickly and painlessly, but instead lingered, unable to breathe and aware of what was happening to her. The killing was certainly "unnecessarily torturous to the victim," Dixon, at 9, and, in view of other cases addressing this point, heinous, atrocious, and cruel.
We also disagree with appellant's argument that the murder was not "committed in a cold, calculated, and premeditated manner without any basis of moral or legal justification." See § 921.141(5)(i), Fla. Stat. (1979). Appellant contends that the evidence introduced at trial failed to show any extraordinary coldness or calculation or that the killer acted with no moral or legal justification, that there was little evidence of premeditation, and that this particular finding was an improper doubling of aggravating circumstances because it was based on the same facts as the "heinous, atrocious, and cruel" finding. See Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977).
The record shows that appellant broke into Mrs. Chapman's home, armed himself in her kitchen, and attacked her as she lay sleeping in bed. Nothing indicates that she provoked the attack in any way or that appellant had any reason for committing the murder. There was sufficient evidence for the trial court to find this circumstance applicable.
Nor was there an improper doubling of aggravating factors. As appellee notes, the factor in section 921.141(5)(h) pertains to the nature of the killing itself, while section 921.141(5)(i) relates more to the killer's state of mind, intent, and motivation. These two aggravating factors were not found applicable based on the same facts.
The eighth issue raised on appeal is that the trial judge erred in failing to find applicable any statutory mitigating circumstances. Appellant argues, first, that his use of nerve medication and his hostile behavior warranted a finding that he acted under extreme mental or emotional disturbance, second, that his below normal intelligence and deprived background warranted a finding that his capacity was substantially impaired, and third, that his age should have been considered a mitigating factor. The record contains evidence which contradicts the first two circumstances, and so we will not interfere with the trial judge's decisions with regard thereto. They were within his discretion and there was a sufficient basis for each. As for appellant's argument regarding his age (20 years), in Peek v. State, 395 So.2d 492 (Fla.), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981), we affirmed a decision which refused to apply as a mitigating factor the defendant's age of twenty years. Again, the trial judge acted within the bounds of his discretion on this point.
The last issue on appeal is whether the trial court improperly failed to consider non-statutory mitigating circumstances and erred by not instructing the jury on the existence of such. We have held that the jury instructions which were used here adequately advise "the jury that the list of statutory mitigating factors is not exhaustive." 395 So.2d at 496. As for the assertion that the judge himself failed to consider such circumstances, the non-statutory evidence which appellant contends should have been considered was known to the court. Rather than having *380 been ignored, it appears that the evidence was considered and rejected. The trial judge need not have expressly addressed each non-statutory mitigating factors in rejecting the same, and we will not disturb his judgment simply because appellant disagrees with the conclusions reached.
Because no issue has been raised which warrants reversal of appellant's conviction or sentence, the same are hereby affirmed.
It is so ordered.
ALDERMAN, C.J., and BOYD and EHRLICH, JJ., concur.
OVERTON, J., Concurs in the conviction, but concurs in the result only to the sentence.
McDONALD, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part, dissenting in part.
I concur in the conviction and all that is said in conjunction thereto, but I would remand for a new sentencing order. The trial judge clearly erred in holding that this homicide was a great risk of danger to many persons. I also disagree with his and the majority's finding that it was proved beyond a reasonable doubt that the homicide was committed in a cold, calculated, and premeditated manner. Since there appears some evidence in mitigation relative to the defendant's ignorance, dull mental capacity, and the history of his childhood, and being unable to say with certainty that the sentencing judge would impose the death penalty when he is unaided by the improper aggravating findings, the present sentence should be vacated with instructions to the trial judge to resentence the defendant.