597 So.2d 776 (1992)
Oscar MASON, Appellant,
v.
STATE of Florida, Appellee.
State of Florida, Appellant/Cross-Appellee,
v.
Oscar Mason, Appellee/Cross-Appellant.
Nos. 72918, 75797.
Supreme Court of Florida.
March 5, 1992.
Rehearing Denied May 29, 1992.
*777 Larry Helm Spalding, Capital Collateral Representative and Martin J. McClain, Chief Asst. CCR, and Judith D. Dougherty, Asst. CCR, Tallahassee, and Billy H. Nolas and Julie D. Naylor, Special Capital Collateral Representatives, Ocala, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen. and Candance M. Sunderland and Peggy Quince, Asst. Attys. Gen., Tampa, for appellee/cross-appellant.
PER CURIAM.
Oscar Mason, a prisoner on death row, appeals an order of the circuit court denying his motion for postconviction relief. The State appeals an order on Mason's second motion for postconviction relief in which the circuit court vacated Mason's death sentence and ordered a new sentencing proceeding. Mason cross appeals the denial of relief on the remaining claims raised therein. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Mason was convicted of first-degree murder and sentenced to death in 1981. This Court affirmed the conviction and death sentence in Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). The details of the crime are set forth in that opinion. Mason subsequently filed a motion for postconviction relief, claiming, inter alia, that he was not competent at the time of his trial. The circuit court summarily denied the motion. We reversed and remanded for an evidentiary hearing on the competency issue without reaching the other claims. Mason v. State, 489 So.2d 734 (Fla. 1986). After the evidentiary hearing the circuit court again denied relief. Mason appealed.
While the appeal was pending in this Court, Mason filed a second postconviction motion alleging, in part, that the jury and judge at his original sentencing failed to consider nonstatutory mitigating evidence in violation of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). We relinquished jurisdiction to allow the circuit court to consider that claim. After an evidentiary hearing, the circuit court granted relief on the Hitchcock claim and ordered a new sentencing proceeding. The State appeals that order. Mason cross appeals the denial of relief on the remaining issues.

Competency claim
Mason was charged with attempted first-degree murder prior to the murder from which the instant conviction arose. Two psychiatrists, Dr. Gardner and Dr. Bourkard, evaluated him in March 1980 in connection with the attempted murder charge. They found him competent at the time of the offense and at the time of their evaluations. Mason committed the murder underlying the instant death sentence approximately one week after those evaluations.
In approximately October 1980, prior to trial on the murder charge, defense counsel asked the court to appoint experts to evaluate Mason's competency. Dr. Bourkard, who had evaluated Mason previously in relation to the attempted murder charge, interviewed him again and found him competent to stand trial. A third psychiatrist, Dr. Gonzalez, also examined Mason and found him competent. Mason was tried and convicted of first-degree murder in April 1981.
In his motion for postconviction relief, Mason alleged that the psychiatrists who evaluated his competency failed to consider significant evidence regarding his mental health. Mason proffered evidence of an extensive history of psychotic behavior, mental retardation, and drug abuse that possibly was not considered by the psychiatrists. We remanded for a nunc pro tunc competency evaluation. After an evidentiary hearing, the circuit court found that there was sufficient evidence to conduct a retrospective competency evaluation and determined that Mason was competent to *778 stand trial at the time of the 1981 murder trial.
In remanding for the competency evaluation, we held that "[s]hould the trial court find, for whatever reason, that an evaluation of Mason's competency at the time of the original trial cannot be conducted in such a manner as to assure Mason due process of law, the court must so rule and grant a new trial." Mason, 489 So.2d at 737. Mason relies on this language to argue that the evidence was insufficient to show that he was competent at the time of his trial, and thus due process requires us to order a new trial.
Numerous expert and lay witnesses who had examined or observed Mason in 1980 and 1981 testified at the evidentiary hearing below. These witnesses included two of the three psychiatrists who conducted the pretrial competency evaluations of Mason, defense counsel and the prosecutor of Mason's murder trial, and defense counsel and the prosecutor of Mason's trial for attempted murder. In addition, the court below considered the transcript of Mason's testimony in his trial for attempted murder, as well as extensive material on Mason's social, educational, medical, and psychiatric history. In light of quantity and quality of this evidence, we find that due process was not violated by the nunc pro tunc competency determination.
At the evidentiary hearing below, Mason presented the testimony of four mental health experts who opined that Mason was not competent at the time of his original trial. They testified that Mason is mentally retarded and illiterate; possibly suffers from brain damage; and has a history of schizophrenia, hallucinations, head injury, substance abuse, and suicide attempts. They based their conclusions on interviews and testing of Mason and a review of documents detailing his mental health history.
With regard to the testimony of these experts, the circuit court found the following:
None of the mental health experts for Mason were able to testify that they had reviewed his prison records (from March 1981 to the time they interviewed him) prior to issuing their reports. There is no reference in any report offered on Mason's behalf about recent prison records. Dr. Joyce L. Carbonell testified that she had such records at the time of the hearing, but was unsure if she had them when she wrote her report.
The period of time between Mason's conviction and his evaluation by Dr. Arthur Norman (four years) and Dr. Carbonell (six years), Dr. James Merikangas (six years) and Ms. Ruth Luckasson (six years) constitutes a significant portion of Mason's life (Mason is 29 years old). Mason has spent that period of time on Florida's Death Row. The simple passage of time  of that significant a portion of one's life  on death row, could explain the gulf between the opinions of those who knew and examined Mason in 1980 and those who examined him in 1985 and 1987.
The State presented the testimony of Drs. Gonzalez and Gardner, two of the three psychiatrists who conducted pretrial competency evaluations of Mason.[1] Dr. Gonzalez, who examined Mason in October 1980, indicated that he relied on Mason's self history, his observations of Mason, and Mason's psychiatric chart from Hillsborough County Hospital where he was hospitalized at the time of the interview. In addition, Mason's trial counsel forwarded medical reports from Mason's psychiatric treatment at St. Joseph's Hospital. Gonzalez knew that Mason heard voices, that he hallucinated, and that he attempted to kill himself. Mason gave Gonzalez details of his past psychiatric treatment, admitted to illegal drug use, said that he attended school only to the second grade and that he was illiterate, and indicated that he received social security benefits for mental disability. Gonzalez knew that Mason had been diagnosed as schizophrenic, paranoid, and depressive/suicidal. Gonzalez testified *779 that the additional background information produced for purposes of the postconviction motion did not change his opinion that Mason was competent at the time of his evaluation.
Dr. Gardner, who examined Mason in March 1980 in connection with the attempted murder charge, admitted to relying solely on Mason's self-report and his own observations. However, according to Gardner, Mason knew the date and his location at the time of the interview, the nature of the charges against him, and that he was out on bond. Mason indicated that he had recently been hospitalized at St. Joseph's Hospital where his psychiatrist had prescribed Thorazine for him (an antipsychotic medication). He gave Gardner information on previous psychiatric treatment he had received. Gardner testified that the additional data provided at the postconviction hearing only confirmed his opinion that Mason was competent to stand trial.
In addition, Drs. Gonzalez and Gardner testified that they had read the transcript of Mason's testimony at his July 1980 trial for attempted first-degree murder. They found that the transcript supported their opinions and demonstrated Mason's competency. With respect to that transcript, the circuit court found the following:
This Court has also read the transcript of Mason's testimony at his trial for attempted First Degree Murder... . Having sat through numerous trials over many years, this Court can state that there is nothing unusual about Mason's testimony. The Court has heard some defendants who have been more articulate and the Court has heard defendants who were less skillful in their testimony. The transcript does depict a defendant who could answer his attorney's questions, remember historical details, provide a defense and withstand aggressive cross-examination. The transcript stands in stark contrast to the predictions of Mason's mental health experts in regard to Mason's ability to testify relevantly.
The testimony of Mason's trial counsel, Richard Edwards, was also significant. Edwards, an experienced defense attorney, opined that Mason was competent at the time of his trial. He testified that Mason's trial behavior was appropriate, that he was able to communicate with Mason, that Mason's answers to his questions were responsive, and that Mason had the ability to assist in planning his defense.
Mason argues that because Drs. Gardner and Gonzalez testified only that he was competent at the time of their evaluations and could not express an opinion as to his competency at the time of trial, we must order a new trial. We reject this argument. We have recognized that competency to stand trial may fluctuate. See, e.g., Lane v. State, 388 So.2d 1022 (Fla. 1980) (determination of competency made nine months earlier does not control in view of evidence of possible incompetency on eve of trial). Nevertheless, there is no evidence in this record to suggest that Mason's competency changed between the time of the psychiatric evaluations and his trial. Rather, the testimony of Mason's trial counsel supports the opposite conclusion.
Competent substantial record evidence supports the circuit court's conclusion that Mason was competent at the time of his trial for first-degree murder. It is the duty of the trial court to determine what weight should be given to conflicting testimony. The court found the testimony of those who observed and examined Mason around the time of his trial more convincing than the testimony of those who examined him years later. Where there is sufficient evidence to support the conclusion of the lower court, we may not substitute our judgment for that of the trial judge. State v. Sireci, 536 So.2d 231, 233 (Fla. 1988). We affirm the denial of relief on this claim.

Hitchcock claim
The state concedes that Hitchcock error occurred at Mason's original sentencing *780 proceeding.[2] Therefore, the only issue before this Court is whether the error was harmless.[3]
With respect to this claim, the circuit court found the following:
[T]he jury did not hear or consider what this Court perceives as substantial nonstatutory mitigating evidence about the Defendant including, but not limited to, the Defendant's long history of mental illness, the fact that he suffered from organic brain damage, that he suffered from mental[] retardation, had a history of drug abuse, that he attempted suicide on four occasions during 1980, and that he had a history of suffering from depression and hallucinations. These important and significant mitigating factors were not investigated, developed or presented by the Defendant's trial counsel ... nor considered by the sentencing court or the jury at the penalty stage of the Defendant's trial. All of the expert and nonexpert evidence proves or at least tends to prove a number of nonstatutory mitigating circumstances. This Court finds from the evidence presented to this Court that the jury, the sentencing judge, and the Defendant's trial counsel were restricted by the statutory scheme in effect at the time of the Defendant's trial.
The Court cannot say beyond a reasonable doubt that the jury in the original trial would not have returned a life sentence recommendation if the nonstatutory mitigating evidence had been presented.... Had the jury recommended a life sentence, the sentencing judge may have been required to conform his sentencing decision to Tedder v. State, 332 322 So.2d 908 (Fla. 1975), which requires that if there is a reasonable basis for the recommendation of a life sentence, the sentencing judge is bound by the recommendation. Therefore, this Court cannot say that the Hitchcock error in this case was harmless.
We cannot say that the trial court erred in its conclusion that the error was not harmless. In light of the substantial nonstatutory mitigating evidence now presented by Mason, we cannot say beyond a reasonable doubt that the aggravating circumstances would have outweighed the mitigating circumstances had such evidence been presented at the trial. Hall v. State, 541 So.2d 1125, 1128 (Fla. 1989).
As a consequence of our ruling, it is unnecessary for us to consider the remaining issues raised by Mason because all of them pertain to his sentence.
Accordingly, we affirm the order denying relief on Mason's claim that he was not competent at the time of trial. We also affirm the order vacating the death sentence and ordering a new sentencing proceeding because of Hitchcock error. We remand for a new sentencing proceeding before a jury.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Dr. Bourkard, who evaluated Mason in connection with both the attempted murder and murder charges, died before the evidentiary hearing below.
[2] Neither the jury instructions nor the sentencing order recognized the need to consider nonstatutory mitigating evidence.
[3] In addition to arguing that the Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), error was harmless, the State asserts that the claim is barred because it is untimely. Mason raised this claim within the deadline established by this Court in Adams v. State, 543 So.2d 1244 (Fla. 1989), for the filing of Hitchcock claims.