706 So.2d 1340 (1997)
William D. ELLEDGE, Appellant,
v.
STATE of Florida, Appellee.
No. 83321.
Supreme Court of Florida.
September 18, 1997.
Rehearing Denied March 5, 1998.
*1342 Richard L. Jorandby, Public Defender, Richard B. Greene, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for Appellant.
Robert A. Butterworth, Attorney General, Carolyn M. Snurkowski, Assistant Deputy Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal a trial court order imposing the death sentence upon William D. Elledge following resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
In 1974, Elledge confessed to a weekend of crimes which included the rape and murder of Margaret Anne Strack and the murder and robbery of Edward Gaffney and Kenneth Nelson.[1] Elledge pled guilty to the murder and robbery of both Nelson and Gaffney and to the rape and murder of Strack. He was sentenced to life imprisonment for the Nelson and Gaffney murders, and in March 1975, he was sentenced to death for the murder of Strack.
This Court reversed and remanded his case for resentencing in Elledge v. State, 346 So.2d 998 (Fla.1977). On remand, Elledge was again sentenced to death, and that sentence was affirmed by this Court in Elledge v. State, 408 So.2d 1021 (Fla.1981). Elledge's subsequent motion for post-conviction relief and a state habeas corpus petition were denied in Elledge v. Graham, 432 So.2d 35 (Fla.1983). However, Elledge received federal habeas relief in Elledge v. Dugger, 823 F.2d 1439 (11th Cir.), reh'g granted in part, 833 F.2d 250 (11th Cir.1987). Elledge's third sentencing proceeding was held in 1989 and he was again sentenced to death. That death sentence was vacated in Elledge v. State, 613 So.2d 434 (Fla.1993).
Elledge's fourth sentencing proceeding took place in November 1993 and is the subject of the instant appeal. The jury recommended death by a vote of nine to three. The trial judge found four aggravating circumstances,[2] no statutory mitigating circumstances, and three nonstatutory mitigating circumstances[3] to which he attributed little weight cumulatively. Finding that the mitigating circumstances were substantially outweighed by the aggravating circumstances, the trial court sentenced Elledge to death. Elledge raises twenty-seven issues in this appeal.[4]
*1343 Elledge first argues that the trial court erred by denying his motion to withdraw his 1975 guilty plea in light of Koenig v. State, 597 So.2d 256 (Fla.1992).[5] We disagree. Florida Rule of Criminal Procedure 3.170(j) (1973), which governed the taking of guilty pleas in 1975, stated:
Responsibility of Court on Pleas. No plea of guilty or nolo contendere shall be accepted by a court without first determining, in open court, with means of recording the proceedings stenographically or by mechanical means, that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness, and that there is a factual basis for the plea of guilty.
The following excerpt is from the plea colloquy which occurred between Elledge and the court in March 1975:
THE COURT: Is the defendant going to enter a plea of guilty as to both counts in the Indictment?
MR. McCAIN [DEFENSE COUNSEL]: That's correct.
THE COURT: Will the defendant and his attorney approach the bench, please? Is that what you want to do, Mr. Elledge?
THE DEFENDANT: Yes, sir.
THE COURT: When you plead guilty to a charge, Mr. Elledge, you are admitting the truth of the facts alleged by the State in this Information. Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Of course, when you plead not guilty, you deny that.
You do understand that you are entitled to have a trial by jury
THE DEFENDANT: Yes.
....
THE COURT: Mr. Elledge, under the law, you could be sentenced to a sentence of death in this charge of first degree murder. Do you understand that?
THE DEFENDANT: Yes; I do.
....
[THE COURT:] On Count I, murder in the first degree, Mr. Elledge, the Court doesn't have any choice, if you are sentenced to life instead of death. That is the only two sentences on that offense. So the Court can't put you on probation, or anything lesser than that. Do you understand that?
THE DEFENDANT: Yes, I do.
THE COURT: You are represented by Mr. McCain, who is standing here with you. Have you discussed fully with him your case, and told him everything that you know about it?
THE DEFENDANT: Yes, sir.
THE COURT: Has Mr. McCain discussed with you any defenses that might be available in the case?
THE DEFENDANT: Yes; we have.
THE COURT: Has he given you the benefit of his advice?
THE DEFENDANT: Yes.
THE COURT: Are you satisfied that Mr. McCain has represented you the best *1344 he can, and done what could be expected of him?
THE DEFENDANT: Yes; I am.
THE COURT: Is anybody forcing you to plead guilty?
THE DEFENDANT: No.
....
THE COURT: Has anybody promised you anything in any way, that you are going to be rewarded in any fashion, or you are going to get probation or leniency, or a life sentence like if you plead guilty?
THE DEFENDANT: No; they haven't.
....
[THE COURT:] Knowing that you could be sentenced to death for this crime of murder in the first degree, Mr. Elledge, do you still wish to plead guilty? Mr. Elledge, do you still wish to plead guilty?
THE DEFENDANT: Yes; I do.
THE COURT: Knowing you could be sentenced to life in prison, or any number of years with a minimum of 30 years on the rape in Count II, do you still wish to plead guilty to that?
THE DEFENDANT: Yes. THE COURT: The Court will make the finding that William Duane Elledge knows what he is doing; that he intelligently, understandingly and advisingly wishes to plead guilty to the charge of murder in the first degree as alleged in Count I of this Indictment; and plead guilty to the charge of rape as alleged in Count II of this Indictment.
The Court, therefore, accepts these pleas and they shall be so entered.
....
[THE COURT:] Accordingly, based upon your plea and the factual testimony presented here, the Court will adjudge you to be guilty of the crime of murder in the first degree as alleged in Count I.
The Court will hereby adjudge you to be guilty of the crime of rape as alleged in Count II.
We conclude that Elledge had "full understanding of the significance of his plea and its voluntariness" as required by rule 3.170(j). See Elledge v. Graham, 432 So.2d 35, 37 (Fla.1983)("[T]he appellant's confessions and guilty plea were properly admitted."). We find our decision in Koenig, rendered almost seventeen years after the plea was entered, inapplicable. See Preston v. State, 444 So.2d 939, 942 (Fla.1984) ("[R]econsideration [of law of the case] is warranted only in exceptional circumstances and where reliance on the previous decision would result in manifest injustice."). We find no error.
Elledge next asserts that the trial court erred in allowing the state to introduce the details of two prior violent felony convictions (Gaffney and Nelson homicides) because he offered to stipulate to their validity. This issue has been decided adversely to Elledge. Freeman v. State, 563 So.2d 73, 76 (Fla.1990); Perri v. State, 441 So.2d 606, 607-08 (Fla.1983)("In the sentencing proceeding, testimony about the details of a prior violent felony involving the use or threat of violence to the person is properly admitted."). We likewise find from our review of the record that the details of the two prior homicides did not become a feature of the case. Thus, we find no error.
Next, Elledge contends that the prosecutor's cross-examination of Ken Roach, the police officer who interrogated him and took his first statement, was beyond the scope of direct examination and was an attempt to elicit improper details of a prior violent felony, the Nelson murder. We disagree. Defense counsel elicited, inter alia, that Roach was an acquaintance of Nelson; that he talked to Mrs. Nelson at the time of the crime; and that Elledge finally confessed to Roach about the Strack, Nelson and Gaffney murders:
ROACH: And then shortly thereafter during a period of silence [Elledge] just volunteered his confession to me.
DEFENSE COUNSEL: What was that? What was that like, Father?
ROACH: He told me that he had killed the girl in a motel room in Hollywood, Florida. That he had shot the man in the store while he was in the process of trying to find some money. And then he had taken a bus to Jacksonville and paid his way out to Jacksonville Beach and walked *1345 out on the beach and found this Beacon Motel. And went in and under the pretense of renting a room and had a gun with him that he had taken from a prior scene, and he got the jump on the people, tied them up and that Mr. Nelson got loose from his bounds and, you know, that he shot him.
Accordingly, we conclude that the trial court did not abuse its discretion by allowing the prosecutor to cross-examine Roach on the facts of Nelson's murder such as the number of shots fired, the type of weapon used and where it was found. Jones v. State, 580 So.2d 143, 145 (Fla.1991)("Trial courts have wide latitude to impose reasonable limits on the scope of cross-examination."). We find no error.
We also reject Elledge's claim that the court erred by allowing evidence of after-death activity. In his taped statement, Elledge described activities such as putting the top half of Strack's body over the edge of the bathtub and washing the blood from her nose; grabbing hold of her feet, throwing her out the back door and rolling her down the stairs feet first; dumping her in a church parking lot; and rifling through her purse. In 1983, this Court reviewed Elledge's statements and concluded that they were properly admitted. Elledge v. Graham, 432 So.2d 35, 37 (Fla.1983). We find no error.
As his sixth issue, Elledge maintains that the trial court should not have subjected him to a compelled mental health examination by the state's expert because there was no authority to compel the exam. We disagree. Florida Rule of Criminal Procedure 3.202(d) requires the court, in cases where the state seeks the death penalty and where the defendant intends to establish mental mitigation, to order that the defendant be examined by a mental health expert chosen by the state:
Appointment of State Expert; Time of Examination. After the filing of such notice and on the motion of the state indicating its desire to seek the death penalty, the court shall order that, within 48 hours after the defendant is convicted of capital murder, the defendant be examined by a mental health expert chosen by the state. Attorneys for the state and defendant may be present at the examination. The examination shall be limited to those mitigating circumstances the defendant expects to establish through expert testimony.
Although rule 3.202 became effective three years after Elledge's resentencing,[6] we find that the trial court did not abuse its discretion by compelling the exam in order to "level the playing field." See Dillbeck v. State, 643 So.2d 1027, 1030 (Fla.1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 226 (1995). In Dillbeck, we reasoned that
[a]llowing the state's expert to examine a defendant will keep the state from being unduly prejudiced because a defendant will not be able to rely on expert testimony that the state has no effective means of rebutting.
Id. at 1030 (quoting State v. Hickson, 630 So.2d 172, 176 (Fla.1993)). The procedures undertaken in the instant case are consistent with the requirements set forth in rule 3.220 and in Dillbeck. We find no error.
Next, Elledge argues that the state's mental health expert, Dr. Harley Stock, was improperly allowed to rebut Professor Michael Radelet's testimony regarding Elledge's future dangerousness with the results of Elledge's compelled mental evaluation. Elledge contends that rule 3.202(b) only authorizes a compelled mental evaluation to rebut testimony from a mental health professional "who has tested, evaluated, or examined the defendant, in order to establish statutory or nonstatutory mental mitigating circumstances." Because Professor Radelet is not a mental health professional and he based his testimony on the results of his record review and statistical patterns analysis rather than a clinical interview, such as that conducted by Dr. Stock, Elledge claims the playing field was rendered unlevel. We disagree. Dr. Stock *1346 was engaged by the state to rebut Elledge's proposed mitigation regarding possible mental or emotional disturbance, possible impairment of his capacity to conform his conduct to the requirements of the law, and possible future dangerousness. Dr. Stock necessarily conducted a clinical interview with Elledge to rebut the mitigation presented by other defense experts (Drs. Schwartz and Caddy) who likewise conducted clinical interviews. Although Professor Radelet testified without conducting a clinical interview, it was not improper for Dr. Stock to rebut Professor Radelet's testimony with the information available to him from his evaluation. We find no error.
Elledge next claims that the trial court should have given his proposed jury instruction which addressed the nature and function of mitigating circumstances and described several non-statutory mitigators applicable in the instant case. We disagree. The jury was given the standard instruction which states it should consider "any other aspect of the defendant's character or record, and any other circumstances of the offense." See, e.g., Finney v. State, 660 So.2d 674, 684 (Fla.1995), cert. denied, 516 U.S. 1096, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); Jones v. State, 612 So.2d 1370, 1375 (Fla.1992). We find no error.
We also disagree with Elledge's assertion that the trial court gave undue weight to the jury's death recommendation. The judge made comments such as the following to the jury:
It is only under rare circumstances that this Court could impose a sentence other than what you, members of the jury, recommend.
In his sentencing order, however, the judge found compelling reasons to impose the death penalty other than the jury's recommendation. The judge "heard, reviewed and considered everything presented during the penalty phase, in memoranda, correspondence and subsequent hearings." He independently weighed the aggravation and mitigation and explained that the four statutory aggravating factors, which were proven beyond a reasonable doubt, substantially outweighed the three non-statutory mitigating factors. We find no error.
Elledge next argues that the trial judge erroneously applied a presumption of death because, citing to White v. State, 403 So.2d 331 (Fla.1981), he stated "death is presumed to be the proper penalty when one or more aggravating circumstances are found unless they are outweighed by one or more mitigating circumstances." Although the language from White has been superseded in our recent cases,[7] we find that the trial court properly weighed the aggravating and mitigating circumstances.[8] We find no error.
Elledge next asserts that the trial court misstated the testimony of defense expert Dr. Caddy concerning the "extreme mental or emotional disturbance" statutory mitigator:
The Court finds the applicability of this mitigating circumstance was rebutted by the defendant's own expert. Dr. Caddy testified, based upon his examination of the defendant, interviews with family and friends, and, a review of the facts of this *1347 case, that it is his expert opinion was that the defendant was not under extreme mental or emotional disturbance when he committed the murder of Margaret Anne Strack.
We agree that the trial court misstated Dr. Caddy's views, which were that the mitigator applied to Elledge, but we find the error harmless in light of the court's reliance on Dr. Stock's conclusions:
Dr. Stock concluded that the defendant did not suffer from fetal alcohol syndrome and found no indications of any organicity. Also, the defendant did not suffer from any mental illness, impulse control disorder, or post-traumatic stress disorder. Dr. Stock concluded that the defendant had an anti-social personality disorder. Dr. Stock testified that this is not a mental illness, but a life long history of a person who makes bad choices in life and that these choices are conscious and volitional.
....
The evidence presented does not establish, by a preponderance of the evidence, that the defendant was under the influence of extreme mental or emotional disturbance when the murder of Margaret Anne Strack was committed. As such, the court finds that this mitigating circumstance does not apply.
On this record, we conclude beyond a reasonable doubt that the trial court's misstatement of Dr. Caddy's views did not affect the outcome. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Elledge next claims that the trial court failed to consider and find two proposed nonstatutory mitigators: 1) Elledge's history of drug and alcohol abuse and 2) mental health problems which do not rise to the level of statutory mitigation. We disagree. It is evident from the sentencing order that the trial court considered both proposed mitigators. The trial judge acknowledged that alcoholism influenced Elledge's life, and to the extent that his parents were alcoholic and he suffered the physical and mental abuse resulting from those circumstances, the court found nonstatutory mitigation. The judge rejected mental health problems as mitigation based on his findings that the statutory mitigators did not apply. The court found Dr. Stock credible when he testified that Elledge suffered no mental illness but had an anti-social personality disordermeaning Elledge had a life-long history of making bad choices which were conscious and volitional. We find no error.
We likewise find that the trial court did not err in assigning "little weight" to child abuse as a nonstatutory mitigator. The "weight assigned to a mitigating circumstance is within the trial court's discretion and subject to the abuse of discretion standard." Blanco v. State, 706 So.2d 7, 10 (Fla. 1997) (citing Campbell v. State, 571 So.2d 415, 420 (Fla.1990)). The trial court found that Elledge had a difficult and abusive childhood, but was influenced by testimony revealing that Elledge enjoyed a close relationship with his father:
Both Danny Elledge and Connie Moffett described their father as a kind and wonderful man. Father Ken Roach, former Jacksonville detective, testified that after being apprehended, the defendant spoke by telephone with his father. He said the defendant was very open and emotional with his father during the telephone call.
The trial court did not abuse its discretion, "for we cannot say that no reasonable person would give this circumstance [little] weight in the calculus of this crime." See id., 706 So.2d at 11 (citing Huff v. State, 569 So.2d 1247, 1249 (Fla.1990) ("[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court.")). We find no error.
The remaining issues have already been decided adversely to Elledge[9] or are without merit.[10] Accordingly, the sentence of death is affirmed.
It is so ordered.
OVERTON, GRIMES, HARDING and WELLS, JJ., concur.
*1348 ANSTEAD, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
ANSTEAD, Justice, concurring in part and dissenting in part.
While I agree with virtually all of the majority opinion and its conclusions, I do not agree that we can determine that the trial judge's explicit mistake of fact in his sentencing order concerning the nonexistence of a weighty statutory mental mitigator is "harmless error." We simply cannot say that there is no reasonable possibility that a trial court's misconception of the mental health testimony affected the trial court's weighing process in imposing the death sentence. The majority's analysis to the contrary is flawed in several regards.
In the usual case, the difficulty in applying a harmless error analysis is in determining whether there was a reasonable possibility that the trial adjudicator actually relied on the error in making a decision. Here we do not have that difficulty because the trial judge has explicitly told us in writing that he relied on his mistaken view of the expert's testimony in making his sentencing decision. In fact, we recently found harmful error in a virtually identical situation in Larkins v. State, 655 So.2d 95, 100 (Fla.1995):
[T]he trial court concluded that Dr. Dee was not of the opinion that Larkins' condition was of such a nature that the defendant lacked the capacity to appreciate the criminality of his act or to conform his conduct to the requirements of law. In fact, Dr. Lee testified that Larkins' organic brain disorder "impairs his capacity to control that conduct whatever he appreciates it to be."
Id. at 100. Hence, contrary to the majority's analysis, the harmless error standard set out in DiGuilio cannot be met here, where the trial court explicitly relied on an incorrect view of mental health evidence as an important predicate to its conclusion that the death sentence should be imposed. This error can be corrected only by giving the trial court an opportunity to confront the mistake and then reconsider his analysis and conclusion in view of the mistake. Furthermore, the majority's analysis also makes the common mistake explicitly warned against in DiGuilio of simply looking to see if there is "some evidence," besides that erroneously relied upon to prop up the trial judge's conclusion. By quoting another expert's testimony as "some evidence" to support the judge's finding, the majority has directly violated the DiGuilio harmless error standard.
The mistake here is obviously substantial; it involves the nature of critical expert witness testimony about the existence of an important statutory mental mitigating circumstance. Moreover, the mistake is clear on the face of the sentencing order in erroneously stating that the expert's opinion was exactly opposite of that testified to at trial. Of course, if the judge's erroneous statement had been correct, i.e., that defendant's own expert actually gave important mental health testimony against the defendant, such an opinion would have been devastating to the defendant's position. It is one thing to have evidence offered against a defendant at trial; it is quite another to have the defendant's own witness offer evidence against him on the critical issue at trial, i.e., his state of mind at the time of the offense. The effect of such damaging testimony on a fact finder is obvious, and the trial court's mistaken notion that that is what happened in the penalty phase of this case cannot be characterized as "harmless."
In my view we should remand this case to give the trial court an opportunity to reevaluate the evidence and the mitigating factors based on an accurate view of the evidence. It is the trial court, not this Court, that is responsible for the sentencing order, and we should not substitute our view of what we would have done knowing the true facts. We simply cannot know whether the important mental mitigating factor in question here would have been found to exist based on a correct view of the expert testimony and whether the trial court's subsequent analysis and conclusion would have been the same. *1349 Because we cannot tell, we should remand this case to the trial judge, who can tell us.
SHAW, J., concurs.
NOTES
[1] The facts are set out fully in Elledge v. State, 346 So.2d 998, 999 (Fla.1977).
[2] Aggravating factors: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; (2) the capital felony was committed while the defendant was engaged in the commission of, attempt to commit, or escape after committing a rape; (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; and (4) the capital felony was especially heinous, atrocious, or cruel.
[3] Non-statutory mitigating factors: (1) the defendant had a difficult and abusive childhood; (2) the defendant demonstrated some cooperation by confessing after he was caught; (3) the defendant was a friend and provider of support while incarcerated.
[4] Whether the trial court erred by: (1) denying Elledge's motion to withdraw his guilty plea; (2) allowing the state to introduce the details of prior violent felony convictions; (3) allowing testimony concerning prior violent felonies to become a feature of the case; (4) allowing improper cross-examination of Ken Roach; (5) allowing inflammatory evidence of after-death activity; (6) subjecting Elledge to a compelled mental health examination by a prosecution expert; (7) allowing the state to use a compelled mental health evaluation to rebut mitigation not based on a mental health examination; (8) denying defense counsel's request to have his expert view the in-court testimony of the prosecution's mental health expert; (9) sustaining the prosecution's objection to the defense exercise of a peremptory challenge; (10) restricting voir dire; (11) its extraordinary delay in providing a lawful penalty phase; (12) denying Elledge's motion to preclude death based on an unconstitutional delay; (13) giving an improper instruction on reasonable doubt; (14) refusing to instruct the jury on nonstatutory mitigation; (15) failing to explain the nature and function of mitigating circumstances; (16) giving an unconstitutional instruction on the HAC aggravating circumstance; (17) giving undue weight to the jury's death recommendation; (18) applying a presumption of death; (19) failing to consider and/or find the statutory mitigating factor described in section 921.141(6)(c), Florida Statutes, ("The victim was a participant in the defendant's conduct or consented to the act"); (20) basing its order on partially false information; (21) failing to consider and find nonstatutory mitigating circumstances proposed by defense counsel; (22) inaccurately evaluating child abuse as a mitigator, both factually and legally; (23) instructing the jury and finding the avoid arrest aggravator; (24) finding the HAC aggravator and in instructing the jury on this aggravator; and (25) whether the felony murder aggravating circumstance (§ 921.141(5)(d)) is unconstitutional on its face and as applied in this case; (26) whether electrocution violates the state and federal constitutions; (27) whether Florida's death penalty statute is unconstitutional.
[5] In Koenig, we explained the requirements of Florida Rule of Criminal Procedure 3.172(c), governing the taking of pleas in criminal cases:

The rule specifically provides that a trial judge should, in determining the voluntariness of a plea, inquire into the defendant's understanding of the fact that he is giving up the right to plead not guilty, the right to a trial by jury with the assistance of counsel, the right to compel the attendance of witnesses on his behalf, the right to confront and cross-examine adverse witnesses, and the right to avoid compelled self-incrimination.
597 So.2d at 258.
[6] Amendments to Florida Rule of Criminal Procedure 3.220Discovery (3.202Expert Testimony of Mental Mitigation During Penalty Phase of Capital Trial), 674 So.2d 83, 83-84 (Fla.1995)(effective January 1, 1996).
[7] See, e.g., Nibert v. State, 574 So.2d 1059, 1063 (Fla.1990)("[T]his Court has affirmed death sentences supported by one aggravating circumstance only in cases involving `either nothing or very little in mitigation.'") (quoting Songer v. State, 544 So.2d 1010, 1011 (Fla.1989)).
[8] In his order, the trial judge stated:

In summary, the Court finds that there are four (4) aggravating circumstances applicable to this case which have been proven beyond and to the exclusion of every reasonable doubt.
As to mitigation, the Court finds a lack of significant mitigating circumstances. The Court finds zero (0) statutory mitigating factors and three (3) non-statutory mitigating circumstances have been proven by a preponderance of the evidence, though entitled to little weight cumulatively.
The minimal significance which attaches to the non-statutory mitigating circumstances does not approach the weight of overwhelming statutory aggravating factors which have been established.
....
It is the opinion of this Court that the facts and circumstances of this case demand the imposition of the death penalty and that, in fact, the aggravating circumstances clearly and convincingly outweigh the mitigating circumstances so that no reasonable person could differ.
[9] Issues 16, 23, 24, 25, 26, and 27.
[10] Issues 8, 10, 11, 12, 13, and 19. Claim 9 (sustaining the prosecution's objection to the defense exercise of a peremptory challenge) is without merit because the trial judge dismissed the entire panel for other reasons and a new jury was selected.