740 So.2d 520 (1999)
Ronnie Lee JONES, Appellant,
v.
STATE of Florida, Appellee.
Ronnie Lee Jones, Petitioner,
v.
State of Florida, Respondent.
Nos. 91,014, 93,300.
Supreme Court of Florida.
June 17, 1999.
Rehearing Denied September 13, 1999.
*521 Sylvia H. Walbolt, Chris C. Coutroulis, Robert L. Ciotti and Joseph H. Lang, Jr. of Carlton Fields, St. Petersburg, Florida, Alan F. Wagner of Wagner, Vaughn & McLaughlin, Tampa, Florida, and Darren R. Latham, Stetson University, College of Law, St. Petersburg, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Randall Sutton and Sandra Jaggard, Assistant Attorneys General, Miami, Florida, for Appellee.
PER CURIAM.
Ronnie Lee Jones appeals an order entered by the trial court below pursuant to Florida Rule of Criminal Procedure 3.850. Jones has also filed a petition for writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
In 1981, appellant was tried and convicted on three counts of first-degree murder and single counts of burglary, robbery, carrying a concealed firearm, and unlawful possession of a firearm while engaged in a felony, and was sentenced to death as recommended by the jury. This Court affirmed the convictions and sentence. See Jones v. State, 449 So.2d 253 (Fla.1984) (Jones I) (providing the factual background of the crimes).
*522 In 1985, then Governor Martinez determined that there was no basis for clemency and signed a death warrant. Appellant then filed his first rule 3.850 motion and requested a stay. Appellant claimed, among other things, that he was incompetent at the time of his trial. He attached affidavits from psychologists opining that he suffered from organic brain damage and from lawyers who represented him at various stages of the trial who affirmed that appellant seemed incompetent (irrational, violent, and unrealistic) and that had they stayed on the case they would have requested a competency evaluation. The trial court denied appellant's motion without holding an evidentiary hearing. On appeal, this Court reversed the denial and explained as follows:
The state urges that these affidavits are refuted by the trial record which shows that Jones was competent to stand trial and that the trial court did not err in denying the motion without an evidentiary hearing. Whatever the ultimate merits of the respective positions, we do not agree that the motion, files, and records conclusively show that Jones is not entitled to any relief. We reverse and remand with instructions that Jones be granted an evidentiary hearing.
Jones v. State, 478 So.2d 346, 347 (Fla. 1985) (Jones II).
On April 6, 1995, appellant filed an amended motion for postconviction relief. The trial court then ordered an evidentiary hearing on the original competency issue and deferred the remaining issues until after that issue was resolved.
On February 18 through 20, 1997, the trial court held an evidentiary hearing solely on the issue of whether appellant was competent to stand trial in 1981. Appellant presented expert medical testimony Drs. Dudley and Crown, a psychiatrist and psychologist respectivelythat he was incompetent primarily because of organic brain damage during his 1981 trial and testimony from various defense counsel Messrs. Nathan, Kershaw, and Wilson, who generally testified that appellant was incompetent at the time and that had they stayed on or taken the case they would have had appellant evaluated. The State presented one expertDr. Weinstein, a psychologistwho testified that he could not opine whether appellant was competent during his 1981 trial, but testified that appellant was competent and malingering when evaluated in 1991. The State also presented the lead investigator, Detective Blocker, who testified that appellant seemed competent when questioned after his arrest. The trial court denied appellant relief without any explanation thereof in the written order and without attachments.[1]
The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from trying and convicting defendants who are incompetent. See U.S. Const., amend XIV, § 1; Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The test applied to determine competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as a factual understanding of the proceedings against him." Hill v. State, 473 So.2d 1253, 1257 (Fla.1985)(quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). At the time of appellant's offense, the Florida Rules of Criminal Procedure provided:
In considering the issue of competence to stand trial, the examining experts should consider and include in *523 their report, but are not limited to, an analysis of the mental condition of the defendant as it affects each of the following factors:
(i) Defendant's appreciation of the charges;
(ii) Defendant's appreciation of the range and nature of possible penalties;
(iii) Defendant's understanding of the adversary nature of the legal process;
(iv) Defendant's capacity to disclose to attorney pertinent facts surrounding the alleged offense;
(v) Defendant's ability to relate to attorney;
(vi) Defendant's ability to assist attorney in planning defense;
(vii) Defendant's capacity to realistically challenge prosecution witnesses;
(viii) Defendant's ability to manifest appropriate courtroom behavior;
(ix) Defendant's capacity to testify relevantly;
(x) Defendant's motivation to help himself in the legal process;
(xi) Defendant's capacity to cope with the stress of incarceration prior to trial.
Fla. R.Crim. P. 3.211(a)(1)(1980). In evaluating this issue when first presented in posttrial proceedings, the trial court is faced with two questions: (1) whether the court could make a meaningful retrospective evaluation of the defendant's competence at the time of trial; and, if so, (2) whether the defendant was in fact competent at the time of trial. See Mason v. State, 597 So.2d 776, 777-79 (Fla.1992)(requiring the two-part inquiry when the defendant proffered in postconviction proceedings additional significant evidence of incompetence not evaluated in prior competency evaluations). As to the first determination, "[s]hould the trial court find, for whatever reason, that an evaluation of [the defendant]'s competency at the time of the original trial cannot be conducted in such a manner as to assure [the defendant] due process of law, the court must so rule and grant a new trial." Id. at 778 (quoting Mason v. State, 489 So.2d 734, 737 (Fla. 1986)).
In this sense, due process envisions a court that "hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties. In this respect the term `due process' embodies a fundamental conception of fairness that derives ultimately from the natural rights of all individuals." Scull v. State, 569 So.2d 1251, 1252 (Fla.1990) (citation omitted); see U.S. Const., amend. V; Art. I, § 9, Fla. Const. Procedural due process, therefore, requires adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).
The United States Supreme Court has cautioned that determining competency to stand trial retrospectively is inherently difficult, even under the most favorable circumstances. See Drope v. Missouri, 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate, 383 U.S. at 387, 86 S.Ct. 836. The Court has reversed convictions where it determined as a matter of law that a trial court could not make a retrospective competency determination that would afford due process, based solely on the amount of time that elapsed from the date of trial. See, e.g., Drope, 420 U.S. at 183, 95 S.Ct. 896 (where six years elapsed from the trial date to the release of the Supreme Court's decision); see Pate, 383 U.S. at 387, 86 S.Ct. 836 (where elapse of six years from time of trial was a significant factor in like determination). The chances of conducting a meaningful retrospective competency hearing decrease when experts must rely on a cold record. See Mason v. State, 489 So.2d 734, 737 (Fla.1986).
In the present case, appellant's due process rights were impacted by the twelve-year delay in holding the competency hearing when measured from this Court's remand order for such hearing in Jones II. *524 The trial court adjudicated guilt and sentenced appellant in 1981, this Court ordered an evidentiary hearing concerning appellant's competency to stand trial in 1985, and the trial court did not hold that hearing until 1997. Our remand for an evidentiary hearing was based on appellant having submitted "a strong preliminary showing of incompetence," the State's failure to rebut the claim, and the trial court's summary denial of relief. James v. State, 489 So.2d 737, 739 (Fla.1986)(discussing Jones II); see Jones II, 478 So.2d at 347. The State offered no explanation for the delay and did not dispute appellant's claim at oral argument that the delay was not due to his conduct, except to argue that somehow appellant's 1986 petition for writ of prohibition to disqualify the judge contributed to the delay. We reject this argument. Moreover, the record on appeal does not reveal the reason for the delay. For twelve years and without explanation, the defendant sat on death row awaiting the competency hearing ordered by this Court. Thus, this delay, which was undisputedly not due to appellant, deprived him of a timely hearing.
Other factors that weigh against the ability to make a meaningful retroactive competency determination are that appellant was not subject to a competency evaluation by a qualified expert contemporaneous with his trial. Furthermore, the State's only expert witness (Dr. Weinstein) testified at the hearing that he could not opine as to appellant's competency at trial since he did not evaluate appellant at that time. We therefore conclude that the twelve-year delay undisputedly not due to appellant, the lack of psychological testing contemporaneous to trial, and the State's own evidence that a retroactive competency determination is not possible establish the inability to provide appellant a meaningful retrospective competency determination that complies with due process.
We further note that the trial court's failure to hold a timely hearing and to make findings of fact and conclusions of law violated Florida Rule of Criminal Procedure 3.850(d). In Jones II, this Court reversed the trial court's summary denial of appellant's rule 3.850 motion that raised the identical competency issue. This Court explained that appellant had submitted evidence entitling him to an evidentiary hearing and reversed and remanded with instructions for such a hearing. Jones II, 478 So.2d at 347. Pursuant to rule 3.850, "[i]f an evidentiary hearing is required, the court shall grant a prompt hearing thereon and shall ... determine the issues, and make findings of fact and conclusions of law with respect thereto." Fla. R.Crim. P. 3.850(d). Here, the trial court held an extensive hearing solely on the issue of competence, heard conflicting evidence, and made no findings of fact or conclusions of law. See Fla. R.Crim. P. 3.211 (1980) (providing numerous factors to be considered). The trial court, moreover, did not make a verbal ruling on the issue, took the matter under advisement, and made no findings in the written order. When an appellate court finds that a defendant's postconviction claim requires an evidentiary hearing, the trial court must hold the hearing in a timely manner and must announce its findings and conclusions as required by law. See id.; Fla.Code Jud. Conduct, Canon 3B(8)("A judge shall dispose of all judicial matters promptly, efficiently, and fairly.").
The egregious delay in this case brings to mind the criticism by Justice Breyer of the United States Supreme Court, who condemned excessive delays in the processing of death penalty appeals. See Elledge v. Florida, ___ U.S. ___, 119 S.Ct. 366, 142 L.Ed.2d 303 (1998) (Breyer, J., dissenting from denial of certiorari). Although writing in terms of the Eighth Amendment's prohibition against cruel and unusual punishment, his comments are equally pertinent in the instant case. Justice Breyer opined that:
Twenty-three years under sentence of death is unusualwhether one takes as a measuring rod current practice or the *525 practice in this country and in England at the time our Constitution was written. See, e.g., P. Mackay, Hanging in the Balance: The Anti-Capital Punishment Movement in New York State, 1776-1861, p. 17 (1982) (executions took place soon after sentencing in 18th century New York); Pratt v. Attorney Gen. of Jamaica, [1994] 2 App. Cas. 1, 17 (P.C. 1993) (same in United Kingdom); see also T. Jefferson, A Bill for Proportioning Crimes and Punishments (1779), reprinted in The Complete Jefferson 90, 95 (S. Padover ed.1943); 2 Papers of John Marshall 207-207 (C. Cullen & H. Johnson eds.1977) (petition seeking commutation of a death sentence in part because of lengthy 5-month delay).
Moreover, petitioner argues forcefully that his execution would be especially "cruel." Not only has he, in prison, faced the threat of death for nearly a generation, but he has experienced that delay because of the State's own faulty procedures and not because of frivolous appeals on his own part. His three successful appeals account for 18 of the 23 years of delay. A fourth appeal accounts for the remaining 5 years-which appeal, though ultimately unsuccessful, left the Florida Supreme Court divided 4-2, 706 So.2d 1340 (1997); see Brief in Opposition 12 (conceding that "[a]ll delays were a result of [petitioner's] `successful litigation' in the appellate courts of Florida and the federal system.").
. . . .
Finally, a reasoned answer to the "delay" question could help to ease the practical anomaly created when foreign courts refuse to extradite capital defendants to America for fear of undue delay in execution. See Soering v. United Kingdom, 11 Eur. H.R. Rep. 439 (1989) (holding that the extradition of a capital defendant to America would be a violation of Article 3 of the European Convention on Human Rights, primarily because of the risk of delay before execution).
Id., 119 S.Ct. at 366-67 (emphasis added).
The delay in the instant case may be viewed as more egregious than in Elledge since the delay there was spent processing the defendant's appeals in both the Florida and federal courts. Here, the State sought and secured the death penalty, appellant filed his postconviction competency claim, this Court ordered a hearing, yet the case was unexplainedly continued without the hearing for all these years.
The trial court, prosecutor, and defendant all share in the responsibility of acting in a timely manner. When this Court orders an evidentiary hearing, judicial economy and a sense of justice militate that the lower court act promptly on our instructions. Failure to act promptly deprives defendants of due process under the law and reflects poorly on our justice system.
Accordingly, the trial court's order is reversed and appellant's judgment and sentence is vacated. Appellant's other issues on appeal and his petition for writ of habeas corpus are rendered moot. The State may reprosecute appellant if he is found to be presently competent to stand trial. See Drope, 420 U.S. at 183, 95 S.Ct. 896.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, J., concurs with an opinion.
WELLS, J., concurring.
I concur in the majority opinion fully and write separately to point out that this Court has recently taken steps to avoid what has occurred in this case. At present, we have working a committee of our most experienced trial judges to advise us as to the implementation of a case management process for capital postconviction *526 proceedings. We currently have in the design stages a computerized program for tracking capital postconviction cases which will be in place by the fall of this year. I look forward to the early implementation of procedures to avoid what has occurred in this case and too many other cases.
However, avoiding the ineptness and embarrassment which this case represents ultimately relies upon the commitment of our circuit judges in each circuit in this state to manage a capital case for which the circuit judge has responsibility with the diligence that the public, the defendant, and the victims of such crimes expect such cases to receive. The assigned circuit judge must give the case special concentrated attention.
Also required is that the state attorneys and the assistant attorneys general deal with these cases with regular and periodic review in their offices. I cannot accept any excuse or have any tolerance for the State placing a person on death row and allowing that person to linger there for the period of time, or even near the period of time, that has occurred in this case. The State is the prosecutor, and that has to mean that the State does all that is reasonably expected and possible to process capital cases within an objectively reasonable time period. We allow the State to place the defendant convicted of a capital crime in special confinement. That has to place a concomitant special responsibility upon the State to obtain the completion of that defendant's court process by diligent pursuit so that defendant is removed from that special confinement either by determination that the sentence of death is inappropriate or the sentence is executed. The State has the responsibility to have hearings timely scheduled, matters timely called to the attention of the circuit court, and records timely and adequately produced.
NOTES
[1] The trial court's order reads in full: "This cause, having come on for an evidentiary hearing before this Honorable Court, and the Court having listened to and evaluated the testimony of the witnesses, and having received physical items into evidence, it is the finding of this Court that the Rule 3.850 motion filed on behalf of Defendant is hereby DENIED."