PER CURIAM.
Pedro Hernandez-Alberto appeals an order of the circuit court dismissing his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the trial court’s order and deny the petition for a writ of habeas corpus.
FACTUAL AND PROCEDURAL HISTORY
Hernandez-Alberto, a citizen of Mexico who was legally residing in Florida, was convicted for the January 3, 1999, murders of his stepdaughters Donna Berezovsky and Isela Gonzalez. Hernandez-Alberto was arrested in Brookshire, Texas, en route to Mexico. He was interrogated by Texas law enforcement officers and confessed to the murders. He was returned to Florida after a brief extradition hearing at which he was represented by appointed counsel.
Hernandez-Alberto and Maria Gonzalez were married in 1996 after a courtship of several years. Gonzalez had an adult son, her adult daughter Isela, and her minor daughter Donna. Hernandez-Alberto and Gonzalez had one child together, Gabriella, who was an infant at the time of the homicides. Prior to and during the marriage, Gonzalez lived with her children in her home in Apollo Beach, Florida. She also owned and operated a family business known as the Apollo Beach Family Restaurant.
On the morning of the murders, Hernandez-Alberto and Gonzalez engaged in an ongoing argument about ownership of the home and business. Hernandez-Alberto insisted that Gonzalez place his name on the title to the home and the business, which she had owned solely prior to their marriage. After denying Hernandez-Alberto’s demands, Gonzalez left for work at the restaurant. Upon her departure, Hernandez-Alberto put Gabriella in a back bedroom and confronted eleven-year- *197 old Donna in the family room. He told Donna to pick up a toy. When Donna refused, he struck her on the head near the right ear, which knocked her to the floor. Hernandez-Alberto then removed a gun from his fanny pack and shot Donna as she lay face down.[1] Donna died from the gunshot wound. Hernandez-Alberto then drove to the Apollo Beach Family Restaurant where Gonzalez and Isela were working. Upon entering the back of the restaurant, Hernandez-Alberto went directly to the restroom where he remained for approximately eight to ten minutes. Upon exiting the restroom, he walked up behind Isela and shot her twice in the back. After Isela fell to the floor, he then shot her once in the head.
After the shooting, Hernandez-Alberto left the restaurant with the gun in his hand, got into his car, and fled toward Mexico. He was arrested in Brookshire, Texas, a small town near Houston. When interviewed by Texas law enforcement officers, Hernandez-Alberto confessed to shooting and killing both Donna and Isela. At the time of his arrest, Hernandez-Alberto had a gun in his possession, which was later determined to be the murder weapon. A fanny pack was also found in his possession.
Hernandez-Alberto’s competency to stand trial was an issue before trial. The trial court conducted a pretrial competency, sanity, and psychiatric evaluation in spring 1999, adjudging Hernandez-Alberto incompetent to stand trial and committing him to a treatment center in Miami. Hernandez-Alberto v. State, 889 So.2d 721, 726 (Fla.2004). After several evaluations over the course of two years, Hernandez-Alberto was found competent to stand trial in 2001 and trial commenced in August 2001. Id.
Throughout the trial, defense counsel asserted that Hernandez-Alberto suffered from a mental illness and possible brain damage from an automobile accident that had occurred several years prior to the homicides. Hernandez-Alberto was uncooperative with his attorneys, the investigators assigned to aid in his defense, and the doctors appointed to evaluate him. He also made repeated outbursts in the courtroom, shouting profanities directed at the court. He had to be removed from the courtroom on several occasions.
The trial court conducted two Nelson[2] inquiries, finding both times that Hernandez-Alberto had been zealously represented by counsel. However, substitute counsel was appointed after the first hearing. At the beginning of the trial, Hernandez-Alberto expressed his desire to discharge the substitute counsel and represent himself. After a Faretta[3] inquiry, Hernandez-Alberto represented himself for two days with discharged counsel acting as standby counsel at the trial court’s order. During the two days that Hernandez-Alberto represented himself, the trial court asked him numerous times if he wished to have his counsel reappointed, and he declined. On the morning of the final day of the guilt phase, Hernandez-Alberto moved for standby counsel to be reappointed prior to closing arguments, and the trial court granted his request. 889 So.2d at 728-29.
*198 Prior to the commencement of the penalty phase in November 2001, the trial court revisited the competency issue based on a motion filed by defense counsel. Id. at 727. The court noted that Hernandez-Alberto had represented himself throughout the trial, conducted himself appropriately, and was able to ask competent questions in his defense. Id. The trial court concluded that Hernandez-Alberto remained competent to proceed with the penalty phase. Id.[4]
The jury convicted Hernandez-Alberto on two counts of first-degree premeditated murder. By a vote of ten to two, the jury recommended that he be sentenced to death for each murder. The trial court agreed with the jury’s recommendation and sentenced Hernandez-Alberto to death for each of the murders. The trial court found three aggravating circumstances for the murder of Donna Berezov-sky and gave all three great weight: (1) the defendant had previously been convicted of another capital offense or of a felony involving the use of violence to some person; (2) the victim was a person less than twelve years of age; and (3) the victim was particularly vulnerable because the defendant stood in a position of familial or custodial authority over the victim. The trial court found two aggravating circumstances for the murder of Isela Gonzalez and gave both of them great weight: (1) the defendant had been previously convicted of another capital felony or of a felony involving the use of violence to some person; and (2) the crime for which the defendant was to be sentenced was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial court found two statutory mitigating circumstances,[5] which were given some weight, and eight nonstatutory mitigators,[6] which were given little to some weight.
On appeal, Hernandez-Alberto raised seven claims of error.[7] This Court denied all of the claims on the merits and affirmed Hernandez-Alberto’s two convictions of *199 first-degree murder and his two death sentences. Hernandez-Alberto, 889 So.2d at 734.[8]
The Office of Capital Collateral Regional Counsel (CCRC) filed Hernandez-Alberto’s initial postconviction motion in March 2006. However, Hernandez-Alberto refused to sign the required verification of the motion. CCRC also filed a separate motion alleging that Hernandez-Alberto was incompetent to proceed in his capital collateral proceedings. The trial court appointed two psychiatrists to conduct a competency evaluation. This was the start of over four years in which the court ordered competency evaluations of Hernandez-Alberto, held hearings regarding his competency to proceed with postconviction proceedings, held hearings regarding the status of his postconviction motion, and conducted inquiries into his requests to represent himself in postconviction proceedings. Throughout all of these proceedings, Hernandez-Alberto refused to sign a verification of the motions filed by CCRC. He repeatedly stated his desire to file his own motion, but ultimately filed nothing. The details of these protracted postconviction proceedings are outlined below. After granting repeated extensions of time and giving Hernandez-Alberto numerous opportunities to file a verified motion, the court finally dismissed the unverified postconviction motion with prejudice. This appeal followed and Hernandez-Alberto also filed a petition seeking habeas corpus relief from this Court.
ISSUES AND ANALYSIS
Hernandez-Alberto raises two issues in his postconviction appeal. He asserts that the trial court erred in dismissing his post-conviction motion with prejudice and erred in finding him competent to proceed with his postconviction proceedings. In his ha-beas petition, Hernandez-Alberto argues that this case should be remanded to the trial court for a determination under Indiana v. Edwards, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), of whether he should have been permitted to represent himself at trial. He further argues that if such a determination cannot be made, then he is entitled to a new trial. We address each claim in turn below.
Dismissal of Postconviction Motion
Hernandez-Alberto contends that he was denied due process when the trial court dismissed his unverified postconviction motion with prejudice because he never indicated that he wanted to waive his postconviction proceedings.
Competent defendants who are represented by counsel maintain the right to make choices with respect to their attorneys’ handling of their cases. Hojan v. State, 3 So.3d 1204, 1211 (Fla.2009). “Competent defendants have the constitutional right to refuse professional counsel and to represent themselves, or not, if they so choose.” Durocher v. Singletary, 623 So.2d 482, 483 (Fla.1993) (citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Defendants have the right to proceed pro se in capital trial proceedings. Id. Capital defendants may also withdraw postconviction motions filed on their behalf. See Sanchez-Velasco v. State, 702 So.2d 224 (Fla.1997) (affirming postconviction court’s ruling that defendant could withdraw his rule 3.850 motion and affirming postconviction court’s dismissal of collateral counsel).
As this Court explained in Durocher, “[i]f the right to representation can be waived at trial, we see no reason why *200 the statutory right to collateral counsel cannot also be waived.” Durocher, 623 So.2d at 483. However, the Court caur tioned that “the state has an obligation to assure that the v^aiver of collateral counsel is knowing, intelligent, and voluntary.” Id. at 485. To this end, a detailed Faretta-type inquiry must be conducted by the trial court to determine the defendant’s competency and ability to understand the consequences of the waiver of counsel and the waiver or dismissal of postconviction proceedings before such a waiver can be approved. See id. If this hearing raises questions in the judge’s mind about the defendant’s competency, the judge may order a mental health evaluation and make a competency determination thereafter. Id.
Following Durocher, this Court has consistently held that the right to counsel and to prosecute postconviction claims may be waived so long as the waiver is made voluntarily, knowingly, and intelligently. See James v. State, 974 So.2d 365, 367 (Fla.2008); Alston v. State, 894 So.2d 46 (Fla.2004); Castro v. State, 744 So.2d 986 (Fla.1999); Sanchez-Velasco, 702 So.2d 224.
The procedures described in Durocher have been codified in Florida Rule of Criminal Procedure 3.851(f), which applies when a defendant seeks to dismiss pending postconviction proceedings and to discharge collateral counsel. Rule 3.851(i) requires the trial judge to hold a hearing, and, if the defendant is found to be competent, the trial court is required to conduct an inquiry to determine whether the prisoner knowingly and voluntarily wishes to discharge counsel and to dismiss postcon-viction proceedings. However, this subdivision of the rule “applies only when a prisoner seeks both to dismiss pending postconviction proceedings and to discharge collateral counsel.” Fla. R.Crim. P. 3.851(i)(l) (emphasis added).
Rule 3.851(e)(1) provides that all motions for postconviction relief “shall be under oath.” This Court has explained that the rule requires that all motions be verified, even where the motion amends a previously filed verified motion. Failure to meet this oath requirement warrants dismissal of the motion without prejudice. Groover v. State, 703 So.2d 1035, 1038 (Fla.1997) (affirming dismissal of unverified amended motion); Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993). As this Court explained in Scott v. State, 464 So.2d 1171, 1172 (Fla.1985), the oath requires the prisoner to “affirmatively say that his allegation is true and correct,” which makes him subject to perjury for false allegations in the postconviction motion.
In Carter v. State, 706 So.2d 873, 875 (Fla.1997), we recognized a limited exception to the oath requirement when collateral counsel has a good faith belief that a death-sentenced prisoner is incompetent to proceed in a postconviction proceeding in which factual matters are at issue and the development or resolution of those issues will require the defendant’s input. Under these circumstances, counsel may file a postconviction motion without the inmate’s signature and attach a motion for a competency determination and an accompanying certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the defendant is incompetent to proceed. Carter, 706 So.2d at 876.
The procedures outlined in Carier were subsequently incorporated into Florida Rule of Criminal Procedure 3.851(g). See Amendments to Fla. Rules of Criminal Procedure, 794 So.2d 457 (Fla.2000) (amending the rule to include a new subdivision governing “Incompetence to Pro *201 ceed in Capital Collateral Proceedings”).[9] Under the rule, the motion for a competency determination and the accompanying certificate of collateral counsel replaces the signed oath by the defendant that otherwise must accompany a postconviction motion. See Fla. R.Crim. P. 3.851(g)(2). If the court finds there are reasonable grounds to believe that a death-sentenced prisoner is incompetent to proceed in such circumstances, the court must appoint experts to examine and evaluate the prisoner and conduct a hearing on the issue of competence to proceed. See Fla. R.Crim. P. 3.851(g)(5), (10).
In the instant case, a timely but unverified postconviction motion was filed by CCRC in March 2006, along with a separate motion alleging that Hernandez-Alberto was incompetent to proceed in capital collateral proceedings. In response, the trial court ordered that Hernandez-Alberto be evaluated for competency by psychiatrists Dr. Donald Taylor, Jr. and Dr. Wade Myers. The trial court heard testimony from these two appointed experts and the defense’s psychiatrist, Dr. Arlene Martinez, who had conducted evaluations of Hernandez-Alberto in 2000 and 2005, at a competency hearing in February 2008. In June 2008, the trial court found Hernandez-Alberto competent to proceed and gave him sixty days in which to file a verified postconviction motion. At a July 2008 hearing, Hernandez-Alberto told the court that he was not going to sign a verification of the motion and asked to be represented by a different CCRC attorney. The court granted another sixty-day extension in order for a different CCRC attorney to meet with Hernandez-Alberto and convince him to sign a verification of the motion.
However, at the next status hearing in October 2008, CCRC informed the court that Hernandez-Alberto still had not signed a verification of the motion. The court conducted a Faretta inquiry in which Hernandez-Alberto stated his desire to dismiss CCRC as counsel and to represent himself. The court questioned Hernandez-Alberto about his understanding of his right to appointed counsel, explained the advantages of being represented by an attorney and the disadvantages of representing himself, and expressed the opinion that it was not a good idea for him to represent himself. Hernandez-Alberto expressed his understanding of what the judge had explained. The court determined that Hernandez-Alberto knowingly, intelligently, and voluntarily dismissed CCRC as counsel and chose to represent himself. Over Hernandez-Alberto’s objection, the court appointed CCRC as standby counsel. The court also explained that Hernandez-Alberto needed to file a verified postconviction motion in order to move forward and asked him if he would sign the verification of the motion filed by CCRC. Hernandez-Alberto expressed his intent to write his own motion. Thus, the court dismissed the unverified motion prepared by CCRC. Hernandez-Alberto was granted two successive sixty-day extensions in which to file his own pro se post-conviction motion.
At a January 2009 status hearing, Hernandez-Alberto asked the judge to order the prison to “stop the abuse” of him through the electricity in his cell.[10] When *202 questioned about the status of his postcon-viction motion, Hernandez-Alberto complained that the prison had not provided assistance in filing the motion. When the court asked if he had contacted his standby counsel for help, Hernandez-Alberto replied that he wanted help from someone in the prison. When the court asked whether he had done anything to prepare a postconviction motion, Hernandez-Alberto showed the judge a copy of the United States Constitution and stated that he had asked the supervisor of the prison law library to help with the motion. The trial court concluded that although Hernandez-Alberto was competent to proceed with postconviction proceedings he was not competent to represent himself. Pursuant to Indiana v. Edwards, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), the trial court reappointed CCRC as his counsel and granted ninety days for CCRC to file an amended motion. Hernandez-Alberto continued to protest that the CCRC attorney was not his lawyer and that he still represented himself.
CCRC filed a timely amended motion in March 2009 and was granted an extension in which to file a signed verification. In April 2009, CCRC requested assistance from the director of the Mexican Capital Legal Assistance Program to persuade Hernandez-Alberto to sign a verification. At a July 2009 status hearing, CCRC counsel informed the court that Hernandez-Alberto still had not signed a verification and counsel had exhausted all avenues to persuade him to do so. CCRC also requested another competency evaluation. The court ordered competency evaluations by Dr. Taylor and Dr. Bala K. Rao.
Dr. Taylor reported that Hernandez-Alberto refused to participate in an evaluation interview on two separate occasions. Dr. Taylor stated that it was difficult to arrive at an opinion about Hernandez-Alberto’s competency to proceed because of his lack of cooperation, but believed that the lack of cooperation was “due to willful behavior rather than mental illness.” Dr. Taylor recommended that Hernandez-Alberto be transferred to a secure forensic facility for a longitudinal evaluation. Dr. Rao reported that he was unable to complete a formal evaluation because Hernandez-Alberto refused to cooperate or participate in the interview.
In response to these reports, the court ordered another competency evaluation and observation, which was conducted by Dr. Lawrence Annis, the psychological services director at the Florida State Hospital. Hernandez-Alberto was uncooperative during this evaluation interview. Dr. Annis did not observe any symptoms of major mental illness and opined that Hernandez-Alberto was competent to proceed with his postconviction proceedings.
The court heard testimony from Dr. An-nis and Dr. Taylor at a June 2010 competency hearing. The court also made its own record observations of Hernandez-Alberto’s behavior and understanding of the proceedings. The trial court again found him competent to proceed with post-conviction proceedings. However, Hernandez-Alberto still refused to sign the verification. In August 2010, the trial court dismissed the unverified postconviction motion as facially insufficient without prejudice for Hernandez-Alberto to file a sufficient verified motion within sixty days. *203 When a facially sufficient motion was not filed within that time period, the court issued a final order dismissing the motion with prejudice on November 1, 2010.
Hernandez-Alberto now argues that he in fact waived his right to prosecute his postconviction motion by refusing to sign a verification of his postconviction motion. He contends that the court should have conducted a Durocher inquiry to ensure that the waiver was made voluntarily, knowingly, and intelligently. He also contends that the court should have gone forward on the postconviction claims that did not require his input as provided by Carter and rule 3.851(g)(1).
However, rule 3.851(g)(1) specifically provides that “all collateral relief issues that involve only matters of record and claims that do not require the prisoner’s input shall proceed in collateral proceedings notwithstanding the prisoner’s incompetency.” Fla. R.Crim. P. 3.851(g)(1) (emphasis added). While rule 3.851(g)(2) provides that the motion and certificate of counsel shall replace the signed oath by the prisoner that otherwise must accompany a motion filed under the rule, it also specifically provides that the motion must be “made in good faith and on reasonable grounds to believe that the death-sentenced prisoner is incompetent to proceed.” Fla. R.Crim. P. 3.851(g)(2) (emphasis added). Here, Hernandez-Alberto was twice found to be competent to proceed. And as our analysis of the competency issue below sets forth, the trial court did not abuse its discretion in finding Hernandez-Alberto competent to proceed.
Additionally, rule 3.851(i)(l) specifically provides that subdivision (i) “applies only when a prisoner seeks both to dismiss pending postconviction proceedings and to discharge collateral counsel.” Fla. R.Crim. P. 3.851(i)(l) (emphasis added). Thus, while the rule requires the court to conduct a complete Durocher/Faretta inquiry of a competent prisoner to determine if the dismissal of pending postconviction proceedings and discharge of collateral counsel are knowingly, freely, and voluntarily made, Hernandez-Alberto never expressed any desire to dismiss his postcon-viction proceedings. In fact, he adamantly stated his desire to pursue his own collateral claims pro se. At the January 2009 status hearing in which the court reappointed CCRC as counsel pursuant to Indiana v. Edwards, the court specifically ruled that Hernandez-Alberto was not trying to waive his postconviction rights. At the conclusion of that hearing, Hernandez-Alberto continued to protest that he wanted to represent himself and his rights. At the June 2010 competency hearing, Hernandez-Alberto interrupted testimony to tell the court that he did not want to be in the circuit court and he had ordered his attorney to take his case to the Florida Supreme Court. Even at the conclusion of the July status hearing, Hernandez-Alberto told the court that he wanted to file four motions, including a motion for “retrial” and a motion “for firing my lawyer.”
The rules simply do not cover the situation where a competent, but obstinate defendant refuses to verify a motion for post-conviction relief. Nor does the case law require or authorize a trial court to conduct a Durocher inquiry in those circumstances. However, while the trial court may not have conducted a formal inquiry in this case, the record shows that Hernandez-Alberto was repeatedly warned by the court that it could not consider a motion for postconviction relief without a signed verification and warned that his refusal was stopping the progress of his case. Thus, we find no merit to Hernandez-Alberto’s claim that he was denied due *204 process by the trial court. He thwarted the process himself.
Competency to Proceed with Postconviction Proceedings
Hernandez-Alberto contends that the trial court erred in finding him competent to proceed with his postconviction proceedings. The trial court conducted two separate competency hearings during the course of these postconviction proceedings. The court appointed experts to evaluate Hernandez-Alberto in 2007 and again in 2009. In both instances Hernandez-Alberto refused to cooperate or participate in the evaluations. However, the experts were able to observe Hernandez-Alberto’s behavior, review various records related to his case, and interview individuals who had close contact with him. After both hearings, the trial court found Hernandez-Alberto competent to proceed with his post-conviction proceedings, albeit ultimately concluding that he was not capable of proceeding without counsel.
The criteria for determining competence to proceed is whether a prisoner “has sufficient present ability to consult with counsel with a reasonable degree of rational understanding — and whether he has a rational as well as a factual understanding of the pending collateral proceedings.” Hardy v. State, 716 So.2d 761, 763 (Fla.1998) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)); see also § 916.12(1), Fla. Stat. (2010); Fla. R.Crim. P. 3.211(a)(1); Fla. R.Crim. P. 3.851(g)(8)(A). Section 916.12(3), Florida Statutes (2010), provides that an expert examining a defendant for competence to proceed shall consider the defendant’s capacity to appreciate the charges or allegations against him; appreciate the range and nature of possible penalties; understand the adversarial nature of the legal process; disclose to counsel facts pertinent to the proceedings; manifest appropriate courtroom behavior; testify relevantly; and any other factor deemed relevant by the expert. Similarly, Florida Rule of Criminal Procedure 3.851(g)(8)(B) provides that the experts shall consider and include in them report: the prisoner’s capacity to understand the adversary nature of the legal process and the collateral proceedings; the prisoner’s ability to disclose to collateral counsel facts pertinent to the postconviction proceeding at issue; and any other factors considered relevant by the experts and the court as specified in the order appointing the experts.
“It is the duty of the trial court to determine what weight should be given to conflicting testimony.” Alston v. State, 894 So.2d at 54 (quoting Mason v. State, 597 So.2d 776, 779 (Fla.1992)). “The reports of experts are ‘merely advisory to the [trial court], which itself retains the responsibility of the decision.’ ” Id. (quoting Hunter v. State, 660 So.2d 244, 247 (Fla.1995)). Thus, when the experts’ reports or testimony conflict regarding competency to proceed, it is the trial court’s responsibility to consider all the relevant evidence and resolve such factual disputes. Id.; see also Hardy, 716 So.2d at 764.
“Where there is sufficient evidence to support the conclusion of the lower court, [this Court] may not substitute [its] judgment for that of the trial judge.” Alston, 894 So.2d at 54 (quoting Mason, 597 So.2d at 779). A trial court’s decision regarding competency will stand absent a showing of abuse of discretion. Id.; see also Hardy, 716 So.2d at 764; Carter v. State, 576 So.2d 1291, 1292 (Fla.1989). Thus, the issue before this Court is whether the circuit court abused its discretion in finding Hernandez-Alberto competent to proceed in his postconviction pro *205 ceedings. A trial court’s decision does not constitute an abuse of discretion “unless no reasonable person would take the view adopted by the trial court.” Alston, 894 So.2d at 54 (quoting Scott v. State, 717 So.2d 908, 911 (Fla.1998)).
In the instant case, two separate competency hearings were conducted over the course of these postconviction proceedings. The first competency hearing was held in February 2008. In response to CCRC’s 2006 motion alleging that Hernandez-Alberto was incompetent to proceed in his capital collateral proceedings, the trial court ordered that Hernandez-Alberto be evaluated by psychiatrists Dr. Donald Taylor and Dr. Wade Myers. The psychiatrists traveled to the Union Correctional Institution on March 22, 2007, but Hernandez-Alberto refused to enter the interview room where the doctors were seated. The doctors spent about ten minutes communicating with Hernandez-Alberto while he stood in the hallway. The doctors also attempted unsuccessfully to communicate with him in the holding cell. The doctors submitted separate psychiatric evaluation reports that recounted the same events during the interview. The reports also observed that Hernandez-Alberto had acceptable hygiene, logical and coherent speech at a normal rate and volume, unremarkable psychomotor behavior, and appropriate eye contact, and did not appear to be responding to internal stimuli. The psychiatrists also reviewed a number of documents and records, including pre-trial psychiatric evaluations conducted by other court-appointed experts, a report from the treatment center where Hernandez-Alberto had been committed for a month before trial, the transcript of a pretrial competency hearing, the direct appeal opinion, and DOC medical records regarding refusals of medical care and reports of bizarre behavior.
Dr. Myers reported that Hernandez-Alberto was competent to proceed in post-conviction proceedings and that his uncooperative behavior was voluntary and intended to delay the legal process, not the product of mental illness. Dr. Myers explained that a person who suffered from the different delusions that the defendant had claimed over the last few years would be in an extreme state of mental disorganization with a complete lack of awareness about his behaviors, which was not the case here. Dr. Myers further noted that a major mental illness of psychotic proportions does not appear and disappear within short periods of time as in Hernandez-Alberto’s case. Hernandez-Alberto had not taken any psychotropic medications in the past year, yet his DOC mental health records did not document any disturbances in his thoughts, moods, or behavior. In essence, Dr. Myers stated that the defendant’s delusions only appear intermittently, when it is convenient for him to appear incompetent.
Dr. Taylor reported that Hernandez-Alberto’s lack of cooperation made it difficult to arrive at an opinion within a reasonable degree of medical probability about his level of functioning. Dr. Taylor could not exclude the possibility that the statements about his cell being electrified and his refusal to cooperate with the mental health staff and examiners could be due to a psychotic disorder. However, Dr. Taylor opined that Hernandez-Alberto’s history of behavioral disturbances and lack of cooperation was probably due to malingering or other manipulative behavior.
The court also heard testimony from defense psychiatrist Dr. Arlene Martinez, who filed a competency evaluation report after interviewing Hernandez-Alberto in September 2005 at the prison. Dr. Martinez, who is a native Spanish-speaker, was accompanied by a Spanish-speaking CCRC *206 attorney who attempted to discuss the postconvietion proceedings with the defendant. Dr. Martinez reported that Hernandez-Alberto insisted on discussing various medical problems, the electrical current that he believed to be entering his body from his cell, and his request to be moved to a different cell. After an hour of this interaction, Dr. Martinez ended the interview because she had obtained enough clinical information to make an assessment. Dr. Martinez had also evaluated Hernandez-Alberto in 2000 at the jail in Tampa and found him to be psychotic, paranoid type. Dr. Martinez reported that during the 2005 interview Hernandez-Alberto acted suspicious and guarded, seemed to have mild psychomotor retardation, spoke slowly in a monotone, had a flat affect, exhibited circumstantial thought process in that he repeated the same thing and would not get to the point, had persev-eration in that he continued to talk about the same thing even when the interviewers tried to engage him on the subject of his postconviction proceedings, and was paranoid. Dr. Martinez diagnosed him as suffering from chronic paranoid schizophrenia, not having the ability to consult with counsel, not having the capacity to understand the adversary nature of the process, and not having the ability to disclose to counsel facts pertinent to his postconviction proceeding. Dr. Martinez opined that Hernandez-Alberto was not competent to proceed in his postconviction proceedings. After the hearing, the court ruled that Hernandez-Alberto was competent to proceed with postconviction proceedings.
After CCRC counsel reported in July 2009 that it had exhausted all avenues to persuade Hernandez-Alberto to sign the verification, the court ordered competency evaluations of Hernandez-Alberto by Dr. Taylor and psychiatrist Dr. Bala K. Rao. Dr. Taylor filed a competency evaluation report in October 2009, reiterating much of the information in his 2007 evaluation and noting that he had unsuccessfully attempted to interview Hernandez-Alberto in prison on two separate occasions in October 2009. On each occasion, Hernandez-Alberto refused to talk to Dr. Taylor, which made it difficult for the doctor to arrive at an opinion about Hernandez-Alberto’s level of functioning and competency to proceed. Dr. Taylor stated that the defendant’s history of behavioral disturbances and lack of cooperation was “probably due to malingering and/or other manipulative behavior.” However, Dr. Taylor concluded that he could not “state within a reasonable degree of medical probability that [Hernandez-Alberto] has the capacity to understand the adversary nature of the legal process and proceedings and is capable of disclosing pertinent facts to collateral counsel.” Dr. Taylor recommended that Hernandez-Alberto be transferred to a secure forensic facility for a longitudinal evaluation. Dr. Rao filed a letter in November 2009 stating that he was unable to complete a formal evaluation because Hernandez-Alberto refused to cooperate and refused to participate in an interview.
In response to these reports, the court ordered that Hernandez-Alberto be transferred to a psychiatric unit for observation and evaluation.[11] The Department of Children and Families assigned Dr. Lawrence Annis, the Psychological Services Director *207 at the Florida State Hospital, to conduct an evaluation. Dr. Annis interviewed Hernandez-Alberto at the Union Correctional Institution in February 2010. Dr. Annis was accompanied by a Spanish-speaking psychology resident from Florida State Hospital, who assisted in the examination and served as a translator. Hernandez-Alberto refused to participate in a formal interview with Dr. Annis or the resident. Dr. Annis observed that the defendant presented with adequate hygiene and grooming; had no psychomotor agitation or physical sluggishness; maintained appropriate levels of eye contact; spoke in a normal tone and rate; was alert and attentive; appeared to have normal concentration; had no apparent signs of depression or mania; had a guarded and evasive attitude; did not exhibit that he was responding to internally generated stimuli; had relevant, coherent, and goal-directed thought process; engaged in logical and coherent conversation; was attentive to the interviewers; and had no problems understanding when he conversed with the resident in Spanish.
In addition to this limited interview, Dr. Annis also reviewed Hernandez-Alberto’s DOC records,[12] the reports relating to the murders, and the reports submitted by Dr. Taylor and Dr. Rao. Dr. Annis also interviewed three correctional officers who had regular contact with Hernandez-Alberto. The officers described him as respectful and polite toward correctional officers, interacting with other inmates without problems, adhering to facility rules, being a quiet person who generally keeps to himself, exhibiting no cyclic mood variations, and not responding to internal or unseen stimuli. Dr. Annis also reported that Hernandez-Alberto was aware of the serious criminal charges against him, but did not answer questions regarding the penalties he faced; indicated that the judge was the authority in the courtroom and wanted the judge to know that he was ready to go to court and had refused to talk to the examiner; understood that he needed to work with his attorney to present his case and had filed a motion to dismiss his attorney because “he was not doing his job”; refused to discuss the facts surrounding the murders but communicated with the examiners in a relevant and goal-directed manner; demonstrated awareness of his right to avoid self-incrimination; communicated in a relevant and reality-based manner; and appeared concerned about the possible outcome of his legal situation. Dr. Annis also stated that the behavior described by the security officers and the fact that Hernandez-Alberto calmly indicated his refusal to participate in the interview indicate that he has the capacity for appropriate courtroom behavior. Dr. Annis observed no symptoms of major mental illness and opined that Hernandez-Alberto was competent to proceed.
The court also made record observations about the Hernandez-Alberto’s behavior in the courtroom, noting that he was attentive during the competency hearing, participated during part of the hearing, exhibited appropriate courtroom behavior, and clearly understood the nature of the proceedings. Based upon the experts’ testimony and the court’s own observations, the court found Hernandez-Alberto competent to proceed in the postconviction proceedings.
Based on this record, we conclude that the trial court did not abuse its discretion by finding Hernandez-Alberto competent to proceed. Three separate experts (Dr. Taylor and Dr. Myers in 2008 *208 and Dr. Annis in 2010) have concluded that Hernandez-Alberto is competent to proceed with the postconviction proceedings. Although Dr. Martinez presented conflicting testimony at the first competency hearing, the trial court had the responsibility to resolve this dispute and determine what weight to give the conflicting testimony. Additionally, there was no conflicting testimony presented at the second competency hearing. Dr. Taylor testified equivocally that he could not make a finding that Hernandez-Alberto was either competent or incompetent because he had no recent records to review and because the defendant had refused to participate in an evaluation interview. Dr. Annis did not rely solely on his brief face-to-face interview with Hernandez-Alberto in finding him competent to proceed. Dr. Annis also reviewed prior evaluations, records, and observations of the defendant. The court’s own observations and interactions with Hernandez-Alberto also supported Dr. Annis’s opinion of competency. The defendant exhibited the present ability to communicate his wants and desires, the ability to understand the adversary nature of the proceedings, and the ability, albeit not the desire, to disclose pertinent facts to collateral counsel. Thus, there is sufficient evidence to support the trial court’s conclusion that Hernandez-Alberto was competent to proceed in postconviction proceedings represented by counsel.
This Court may not substitute its judgment for that of the trial judge absent a showing of an abuse of discretion. Alston, 894 So.2d at 54. A trial court’s decision does not constitute an abuse of discretion “unless no reasonable person would take the view adopted by the trial court.” Id. In light of Hernandez-Alberto’s obstinate refusal to verify anything filed by collateral counsel, his dogged persistence that he wanted to file his own postconviction motion even though he did not have the ability or initiative to do so, determinations by multiple experts that Hernandez-Alberto met the competency standard, and the court’s record observations of his courtroom behavior, we conclude that the trial court did not abuse its discretion in finding Hernandez-Alberto competent to proceed in postconviction proceedings with the assistance of counsel. See Peede v. State, 955 So.2d 480, 489 (Fla.2007) (finding sufficient evidence to support finding that uncooperative inmate was competent to proceed in postconviction proceedings where trial court entertained multiple motions from defense regarding competency, held multiple hearings to discuss issue, and considered various experts’ testimony and written reports).
Self-Representation at Trial
In his habeas petition to this Court, Hernandez-Alberto argues that his case should be remanded to the trial court for a determination of whether he should have been permitted to represent himself at trial. He contends that the United States Supreme Court’s decision in Indiana v. Edwards constitutes a fundamental change in the law regarding the standard for determining whether a defendant can represent himself at trial. Indiana v. Edwards held that the United States Constitution does not prohibit states from insisting upon representation by counsel for defendants who are competent enough to stand trial but who suffer from severe mental illness to the point that they are not competent to conduct trial proceedings themselves. 554 U.S. at 178, 128 S.Ct. 2379.
When the defendant in Edwards was discovered trying to steal a pair of shoes from a department store, he fired his gun at a store security officer. The defendant was charged with attempted murder for wounding a bystander. Id. at 167, 128 *209 S.Ct. 2379. The defendant’s mental condition was addressed during three competency proceedings and two self-representation requests. Id. at 167-68, 128 S.Ct. 2379. The trial court ultimately concluded that the defendant was competent to stand trial but not competent to defend himself at trial due to his schizophrenia. Id. at 168, 128 S.Ct. 2379. The state appellate courts concluded that the defendant had been deprived of his constitutional right of self-representation and was entitled to a new trial. Id. The United States Supreme Court agreed to hear the case in order to consider the relation of the mental competence standard to the right of self-representation. Id. at 170, 128 S.Ct. 2379.
The foundational “self-representation” case, Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), held that the Sixth and Fourteenth Amendments include a “constitutional right to proceed without counsel when” a criminal defendant “voluntarily and intelligently elects to do so.” However, Faretta did not consider the problem of mental competency. Cf. Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (explaining that Faretta was “literate, competent, and understanding”). The test for determining whether a defendant is competent to proceed to trial is “whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as a factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); see also Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). However, Dusky did not address the relation of the mental competence standard to the right of self-representation. See Drope, 420 U.S. at 171, 95 S.Ct. 896 (“It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.”). “Dusky’s more general standard sought only to determine whether a defendant represented by counsel was competent to stand trial, not whether he was competent to waive his right to counsel.” Edwards, 554 U.S. at 172, 128 S.Ct. 2379. In Edwards, the Supreme Court concluded that the Constitution “permits judges to take realistic account of the particular defendant’s mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so.” Id. at 177-78, 128 S.Ct. 2379.
Prior to the decision in Edwards, Florida Rule of Criminal Procedure 3.111(d) did “not permit the trial court to take into consideration a defendant’s mental capacity to represent himself.” In re Amendments to Fla. Rule of Criminal Procedure 3.111, 17 So.3d 272, 272 (Fla.2009). Prior to Edwards, the Florida rule provided that “[r]egardless of the defendant’s legal skills or the complexity of the case, the court shall not deny a defendant’s unequivocal request to represent himself or herself, if the court makes a determination of record that the defendant has made a knowing and intelligent waiver of the right to counsel.” Fla. R.Crim. P. 3.111(d)(3) (1998) (emphasis added). Based on the decision in Edwards, this Court amended rule 3.111(d)(3) to provide that the' court must also make a determination that the defendant “does not suffer from severe mental illness to the point where the defendant is not competent to conduct trial proceedings by himself’ in order to grant a defendant’s request for self-representation. In re Amendments, 17 So.3d at 275.
Hernandez-Alberto argues that because his decision to represent himself at trial *210 took place before the decision in Edwards was issued and the subsequent changes to rule 8.111(d)(3), his case should be remanded for a determination of whether he was competent to represent himself. If this determination cannot be made, Hernandez-Alberto argues, he is entitled to a new trial. We find no merit to this claim.
Edwards did not grant any substantive rights to defendants. The decision only explained that states are constitutionally permitted to deny self-representation rights to defendants who are competent to stand trial but not competent to represent themselves. See, e.g., Monte v. State, 51 So.3d 1196, 1204 (Fla. 4th DCA 2011); In re Rhome, 172 Wash.2d 654, 260 P.3d 874 (2011). Edwards also did not address the scope of a state court’s inquiry when deciding whether to accept a waiver of counsel from a defendant who suffers from mental infirmities. See, e.g., Wells v. LeFavre, No. 96 Civ. 3417, 2010 WL 2771877, at *3 (S.D.N.Y. July 13, 2010) (explaining that Edwards does not address the scope of inquiry required when deciding to accept a defendant’s request for self-representation). Indeed, in reaching its decision in Edwards the Supreme Court declined to overrule Faretta, which remains the standard for determining whether a defendant knowingly and intelligently waived his or her right to counsel. See Edwards, 554 U.S. at 178, 128 S.Ct. 2379.
On appeal, Hernandez-Alberto claimed that the trial court erred in allowing him to proceed pro se at trial. Hernandez-Alberto, 889 So.2d at 728. When Hernandez-Alberto indicated to the trial court that he wanted to discharge his counsel, the court conducted a Faretta inquiry, during which Hernandez-Alberto indicated that he understood the charges against him, that he wished to represent himself, and that he understood the consequences of representing himself. Id. at 729. The trial court then permitted Hernandez-Alberto to represent himself, with his discharged counsel remaining as standby counsel. Id. We found no error in this decision because the trial court properly conducted a Faretta hearing and allowed Hernandez-Alberto to exercise his right to represent himself. Id. at 729-30.
Edwards simply does not address the scope of a state court’s inquiry when deciding whether to accept a defendant’s request for self-representation. Additionally, the holding in Edwards, that states are constitutionally permitted to deny a defendant’s right to self-representation when he lacks the mental capacity to conduct his trial defense, is not applicable to the instant case. The trial court did not deny Hernandez-Alberto’s right to represent himself; the court granted him that right after conducting a proper Faretta inquiry. The propriety of that decision remains governed by Faretta, which we applied in deciding that Hernandez-Alberto knowingly and intelligently waived his right to counsel.
Accordingly, we deny Hernandez-Alberto’s petition for habeas corpus as relief is not warranted on this claim.
CONCLUSION
For the reasons explained above, we affirm the trial court’s determination that Hernandez-Alberto was competent to proceed with postconviction litigation and the order dismissing his postconviction motion with prejudice for failing to file a facially sufficient motion. We also deny his petition for habeas corpus relief.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. Hernandez-Alberto gave this account of Donna Berezovsky's murder to Texas law enforcement officers during his confession.

. Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), approved by Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.1988).

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. On appeal, this Court concluded that the trial court’s competency determination was supported by competent, substantial evidence and would not be disturbed on appeal. We also noted that the trial judge had held hearings on Hernandez-Alberto’s competency at various stages of the trial proceedings and did not err in finding him competent to stand trial. Hernandez-Alberto v. State, 889 So.2d 721, 727-28 (Fla.2004).

. The court found the statutory mitigating factor of no significant history of prior criminal activity and the "catch-all” statutory miti-gator, "existence of any other factors in the defendant's background that would mitigate against imposition of the death penalty.” § 921.141 (6)(a), (h), Fla. Stat. (2001).

. The court found that the defendant suffers from a brain injury, lost his mother at an early age, suffered frequent beatings when his father was drinking, suffered beatings and mistreatment at the hands of the neighbor that he lived with after being abandoned by his father, trained and worked as an auxiliary police officer in Mexico City, was capable of maintaining loving and respectful relationships when he was young, voluntarily confessed to the murders upon his arrest, and has borderline intelligence.

. Hernandez-Alberto claimed (1) he was incompetent to stand trial and the trial court erred by failing to hold competency hearings throughout the trial; (2) the trial court erred in allowing him to proceed pro se at trial; (3) the trial court erred in denying his motion for a continuance after the court permitted him to proceed pro se; (4) the trial court erred in initially denying his motion for a PET scan; (5) there was insufficient evidence of premeditation as to the murder of Donna Berezovsky; (6) the death sentence was not proportionally warranted and was premised on inapplicable aggravating factors and the improper disregard of critical mitigating factors; and (7) Florida's capital sentencing statute is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

. Although Hernandez-Alberto sought and was granted an extension of time to file a petition for certiorari with the United States Supreme Court, he never filed a petition.

. The provision was originally included in subdivision (d), but was redesignated as subdivision (g) in a subsequent amendment of rule 3.851.

. At different times during the postconviction proceedings, Hernandez-Alberto has complained to counsel, mental health experts, and DOC staff that the floor of his cell was electrified. He claimed that the electricity was entering his feet and being discharged *202 through his brain. Apparently, this delusion prompted DOC to move Hernandez-Alberto to a new cell. However, the electrification delusion reoccurred intermittently even after the move. At various times, Hernandez-Alberto tied a T-shirt around his neck like a rope, wrapped a makeshift tourniquet around his right leg that resulted in damage to his leg, and hoarded paper that he would wet and stuff under his bed.

. The court originally ordered DOC to conduct this evaluation. However, DOC filed a motion for reconsideration, informing the court that DOC does not have a separate psychiatric unit at the prisons where death row inmates are housed; DOC does not have any personnel trained or licensed to do competency evaluations or render opinions; the Department of Children and Families has the statutory authority to provide competency services; and there would be ethical issues if DOC personnel carried out such services.

. These records included Hernandez-Alberto's disciplinary records, clinical assessments and evaluation reports, and observations of his behavior in custody.