[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14092
_____

D.C. Docket No. 8:14-cv-00138-VMC-MAP


PEDRO HERNANDEZ-ALBERTO,

                                                    Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                                    Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 4, 2016)

Before ED CARNES, Chief Judge, ROSENBAUM, and JILL PRYOR, Circuit
Judges.

PER CURIAM:

In this appeal, we consider whether, for purposes of federal habeas law, a Florida postconviction petition properly filed by a death-row prisoner claiming incompetency remains pending through the final resolution of the postconviction proceedings despite the state court's having found the prisoner competent before the end of those proceedings. We hold that it does and conclude that the prisoner's federal habeas petition was timely filed.

## I.

## A.

In 2002, Petitioner-Appellant Pedro Hernandez-Alberto was sentenced to death by a Florida court, following his convictions for murdering two of his wife's daughters. *Hernandez-Alberto v. State*, 889 So. 2d 721, 724-25 (Fla. 2004). Hernandez-Alberto's conviction became final on May 9, 2005, when he failed to file a petition for writ of certiorari with the United States Supreme Court despite having been given an extended window to do so.

After 308 days elapsed, on March 10, 2006, Hernandez-Alberto filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. *See Hernandez-Alberto v. State*, 126 So. 3d 193, 199 (Fla. 2013) ("*Collateral Appeal*"). Hernandez-Alberto did not sign the motion under oath, as required at

the time[1] by Rule 3.851(e)(1). *See id.* at 199, 200-01. But on March 13, 2006, Hernandez-Alberto's attorney filed a motion requesting a competency determination under Rule 3.851(g) that, under the rules, replaced the signed oath required by Rule 3.851(e)(1). *Id.*; *see* Fla. R. Crim. P. 3.851(g)(2). All parties agree that when the competency motion was filed, Hernandez-Alberto's postconviction petition was properly filed under Florida law.

The state court appointed experts who evaluated Hernandez-Alberto and testified at a competency hearing. *Collateral Appeal*, 126 So. 3d at 201. On June 3, 2008, the state court ruled that Hernandez-Alberto was competent to continue with his postconviction proceedings, a ruling it confirmed by denying reconsideration on July 15, 2008. *See id.* The state court provided Hernandez-Alberto sixty days to file the verification required by Rule 3.851(e)(1). *Id.* He did not do so.

At an October 2008 status hearing, Hernandez-Alberto stated his desire to dismiss his collateral counsel and represent himself. *Id.* The state court conducted

---

[1] In January 2015, Florida amended Rule 3.851(e)(1) to remove the requirement that a postconviction motion be verified under oath by the prisoner, requiring instead that an attorney merely certify that the motion was filed in good faith. *See In re Amendments to the Florida Capital Postconviction Rules*, 148 So. 3d 1171, 1175, 1182 (Fla. 2014) (per curiam); *see also In re Amendments to Florida Rule of Criminal Procedure 3.851*, 156 So. 3d 1036, 1036-37 (Fla. 2015) (per curiam). Nevertheless, because Hernandez-Alberto's postconviction proceedings occurred before these changes, all references to Rule 3.851 in this opinion concern the prior version of the rule.

a *Faretta* inquiry[2] and found that Hernandez-Alberto "knowingly, intelligently, and voluntarily dismissed [his counsel] and chose to represent himself." *Id.*

On October 30, 2008, the court dismissed without prejudice the petition filed by counsel and permitted Hernandez-Alberto to file a *pro se* petition within sixty days, a deadline that it subsequently extended another sixty days. *Id.* But before expiration of the deadline, the state court concluded that, while legally competent to proceed, Hernandez-Alberto was not competent to represent himself, citing *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379 (2008). *Id.* at 201-02. So the state court reappointed collateral counsel for Hernandez-Alberto on January 12, 2009, and gave counsel ninety days to file an amended petition. *See id.* at 202. The amended petition was timely filed but again without Hernandez-Alberto's signature, on March 18, 2009. *See id.*

In April 2009, Hernandez-Alberto's counsel was granted an extension of time to obtain his client's signature, but by June 2009, counsel conceded that Hernandez-Alberto was unlikely to ever sign his petition. *See id.* The court again, at counsel's request, appointed experts to evaluate Hernandez-Alberto's competency. *Id.* After hearing testimony from the experts at a second competency hearing in June 2010, the court again found Hernandez-Alberto competent to proceed. *Id.*

---

[2] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975).

4

After the second finding of competency, Hernandez-Alberto persisted in his refusal to sign his amended postconviction petition. *Id.* The court dismissed the petition without prejudice on August 17, 2010, giving Hernandez-Alberto another sixty days to file a properly verified postconviction petition. *Id.* Hernandez-Alberto failed to do so, and on November 1, 2010, the trial court dismissed his petition with prejudice. *Id.* at 203.

Hernandez-Alberto sought review of the trial court's dismissal of his petition and its competency determinations in the Florida Supreme Court. *See id.* at 199. In an opinion issued July 3, 2013, the Florida Supreme Court upheld both the competency finding and the dismissal of the petition. *See id.* at 199-208; *id.* at 210 ("[W]e affirm the trial court's determination that Hernandez–Alberto was competent to proceed with postconviction litigation and the order dismissing his postconviction motion with prejudice for failing to file a facially sufficient motion."). Rehearing was denied, and the Florida Supreme Court's mandate issued on December 2, 2013.

## B.

On January 21, 2014, Hernandez-Alberto filed a federal habeas petition under 28 U.S.C. § 2254 in the Middle District of Florida. The district court ordered the state to address the timeliness of Hernandez-Alberto's federal petition.

5

In response, the state argued that Hernandez-Alberto's federal petition was time barred under the one-year statute of limitations set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). In the state's view, Hernandez-Alberto ceased to have a properly filed application for postconviction relief pending in state court once the state trial court deemed Hernandez-Alberto competent and he refused to sign his petition—as of July 15, 2008, or at the very latest, when the state court first dismissed the unsigned petition without prejudice in October 2008. So the remaining 57 days of the one-year AEDPA limitations period would have expired, at the latest, in December 2008, well before Hernandez-Alberto filed his federal petition in January 2014.

The district court agreed with the reasoning proffered by the state, finding "no 'properly filed' application for postconviction relief pending" as of the trial court's first competency finding in July 2008, and concluding that the AEDPA clock ran out in December 2008 at the latest. In reaching this conclusion, the district court highlighted language in the Florida Supreme Court's opinion affirming the dismissal with prejudice of the postconviction motion "for failing to file a facially sufficient motion." The district court also rejected the notion that the extended deadlines given to Hernandez-Alberto to file a verified petition or the amended petition filed by counsel in March 2009 could toll the AEDPA limitations period on the basis that extensions of time do not toll the clock, and after the clock

6

expired in December 2008, nothing was left to toll in March 2009. For these reasons, the district court denied the federal petition as untimely.

This Court granted Hernandez-Alberto a certificate of appealability on several questions,[3] including the following:

> Was Hernandez-Alberto's state postconviction petition no longer properly filed and pending, for the purposes of 28 U.S.C. § 2244(d)(2), after the state trial court's first competency determination and dismissal with leave to amend in 2008, or did it remain properly filed and pending until the Florida Supreme Court issued its mandate on December 2, 2013, following its review of the dismissal of his state petition?

## II.

We review *de novo* the district court's dismissal of a § 2254 petition as untimely. *Day v. Crosby*, 391 F.3d 1192, 1193 (11th Cir. 2004).

## III.

Under 28 U.S.C. § 2254, a state prisoner asserting that he is being held in violation of the Constitution or laws of the United States may, in federal court, challenge his incarceration. He must do so, though, within one year of his conviction's becoming final, either on direct review or when the deadline for seeking direct review has expired. 28 U.S.C. § 2244(d)(1)(A). This limitations

---

[3] The other two questions in the certificate of appealability addressed whether Hernandez-Alberto could overcome the time bar of § 2244(d) through equitable tolling or an actual-innocence-of-the-death-penalty exception. Because we conclude that Hernandez-Alberto's federal petition was timely filed based on statutory tolling under § 2244(d)(2), we need not and do not reach these other avenues of avoiding the statute of limitations.

period is tolled, however, while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

The Supreme Court has instructed that an application is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 364 (2000). And an application remains pending until it "has achieved final resolution through the State's post-conviction procedures."  *Carey v. Saffold*, 536 U.S. 214, 220, 122 S. Ct. 2134, 2138 (2002); *see also Lawrence v. Florida*, 549 U.S. 327, 332, 127 S. Ct. 1079, 1083 (2007) ("State review ends when the state courts have finally resolved an application for state postconviction relief.  After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open.").

Based on these guidelines, we conclude that Hernandez-Alberto's federal petition was timely filed on January 21, 2014.  We agree with the parties that Hernandez-Alberto's state petition was "properly filed" as of March 13, 2006, when counsel filed a motion requesting a competency determination under Rule 3.851(g) that, under Florida's rules, replaced the signed oath required by Rule 3.851(e)(1).  Under *Saffold*, Hernandez-Alberto's properly filed petition remained pending until it achieved "final resolution through the State's post-conviction

8

procedures." *Saffold*, 536 U.S. at 220, 122 S. Ct. at 2138 (emphasis added). Hernandez-Alberto's petition was not finally resolved until the Florida Supreme Court affirmed the competency determination and dismissal of the petition and issued its mandate on December 2, 2013. Since Hernandez-Alberto filed his federal petition on January 21, 2014, the filing timely fell on the 50th day after his conviction became final, within the 57-day period remaining on the one-year AEDPA limitations period.

### IV.

Florida advances two arguments for why statutory tolling does not save Hernandez-Alberto's federal petition. First, the state contends that while Hernandez-Alberto's petition may have initially met the filing requirements of Florida law, once the state court found him competent and he still refused to sign the petition, the petition ceased to be "properly filed." Second, Florida asserts that even if properly filed, Hernandez-Alberto's refusal to sign the petition after the finding of competency resulted in its "pending" status being withdrawn. Florida's arguments do not comport with applicable law and precedent.

### A.

Florida bases its first argument on *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S. Ct. 1807 (2005). To understand Florida's contention, we must review *Pace*, but to understand *Pace*, we begin with a prior case, *Artuz*.

9

In *Artuz*, the Supreme Court faced the question of whether a state petition was "properly filed" when it contained two claims that were procedurally barred by state law. 531 U.S. at 7, 121 S. Ct. at 363. The Supreme Court held that an application is "filed" "when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Id.* at 8, 121 S. Ct. at 363. The Court held that an application is "properly filed" "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including, for example, rules on form, timeliness, and filing fees. *Id.* at 8, 121 S. Ct. at 364.

In *Pace*, the Supreme Court confronted a question left open in *Artuz*: "[W]hether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." 544 U.S. at 413, 125 S. Ct. at 1811 (quoting *Artuz*, 531 U.S. at 8 n.2, 121 S. Ct. at 364 n.2). The Supreme Court answered the question in the negative, holding "that time limits, no matter their form, are 'filing' conditions" and that when a state court rejects an application for failing to satisfy that condition, the application was never "properly filed." *See id.* at 417, 125 S. Ct. at 1814.

The prisoner in *Pace* filed a second state postconviction petition that would have been untimely unless it fell within at least one of three exceptions to the state's time limit. *Id.* at 410-11 & n.1, 125 S. Ct. at 1810 & n.1. The state court

10

ultimately dismissed the state petition as untimely, finding, among other things, that Pace had neither alleged nor proven that his case fell within one of the exceptions. *Id.* at 411, 125 S. Ct. at 1810-11.

Pace then filed a federal § 2254 petition that would have been time barred absent any tolling of the AEDPA limitations period. *Id.* at 411-12, 125 S. Ct. at 1811. The district court concluded, though, that Pace's second state petition had tolled the AEDPA deadline, reasoning that because the Pennsylvania statute "set up judicially reviewable exceptions to the time limit," the deadline was not a necessary filing prerequisite. *Id.* at 412, 125 S. Ct. at 1811. The Third Circuit reversed, finding that the state time limit is a "condition to filing," and that if the state petition is untimely, it could never have been properly filed. *Id.*

In affirming the Third Circuit, the Supreme Court observed that "a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception." *Id.* at 413, 125 S. Ct. at 1812. In rejecting Pace's various arguments, the Supreme Court noted that it made no difference whether the condition to filing was "mechanical" or required judicial scrutiny; failing to meet a filing prerequisite meant the state petition was never properly filed in the first place. *See id.* at 414-16, 125 S. Ct. at 1812-13.

11

Florida attempts to liken the signature requirement in Rule 3.851(e)(1) to the Pennsylvania time limit discussed in *Pace*. In other words, the state draws an analogy between the Florida court's determination that Hernandez-Alberto was competent and thus required to sign his petition, on the one hand, and the Pennsylvania court's determination that no exceptions made Pace's petition timely, on the other. Florida contends that signing the Rule 3.851 petition is a condition to filing, *see Hurley v. Moore*, 233 F.3d 1295, 1297-98 (11th Cir. 2000), and that competency is merely a "judicially reviewable exception" to the signature requirement.

We find Florida's argument flawed. Unlike the time bar in *Pace*, Florida's Rule 3.851(g) permitted counsel's good-faith competency motion to take the place of Rule 3.851(e)(1)'s oath. Fla. R. Crim. P. 3.851(g)(2). So while in *Pace* a finding of untimeliness meant the petition was *never* properly filed, here, a finding of competency did not change the fact (conceded by the state) that Hernandez-Alberto's initial petition—accompanied by the Rule 3.851(g) motion—was "in compliance with the applicable laws and rules governing filings" when it was delivered and accepted on March 13, 2006—in other words, was "properly filed"—regardless of the ultimate finding of competency. *See Artuz*, 531 U.S. at 8, 121 S. Ct. at 363-64.

12

The key takeaway from *Pace* is that an untimely application was not, and could not ever have been considered, properly filed. But here, Hernandez-Alberto's petition was "properly filed," and that status rests on counsel's good-faith competency motion, not on the eventual outcome of the competency evaluations. Moreover, nothing in *Pace* supports the idea that a properly filed petition can "change" into an improperly filed one, and Florida has not pointed to any authority suggesting that such a transmogrification is possible. *Cf. id.* at 10, 121, S. Ct. at 364 ("The statute, however, refers only to 'properly filed' applications and does not contain the peculiar suggestion that a single application can be both 'properly filed' and not 'properly filed.'"). Accordingly, Hernandez-Alberto's petition was properly filed, and once a petition is properly filed, the inquiry shifts to how long that petition remained pending.

**B.**

Florida bases its argument that Hernandez-Alberto's petition ceased pending, at the latest, in December 2008 on *Saffold*. In *Saffold*, the Supreme Court considered the meaning of "pending" in § 2244(d) within the context of California's unique postconviction procedures. 536 U.S. at 217, 122 S. Ct. 2136. The Court began its opinion by finding that in the usual state process, not unlike Florida's, a prisoner's petition remains pending "as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that

13

process.  In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Id.* at 219-20, 122 S. Ct. at 2138.  The Supreme Court reached this conclusion, in part, by noting that requiring a prisoner to exhaust a full round of state collateral review "serves AEDPA's goal of promoting 'comity, finality, and federalism.'" *Id.* at 220, 122 S. Ct. 2138 (quoting *Williams v. Taylor*, 529 U.S. 420, 436, 120 S. Ct. 1479, 1490 (2000)).

California, however, did not follow the usual pattern.  Its postconviction process was unique in that, instead of requiring a prisoner to file a notice of appeal from a lower court's denial of a collateral petition, it requires the prisoner to file an original habeas petition in the state supreme court.  *Id.* at 221, 122 S. Ct. at 2139. California did not set a deadline for filing this original petition but merely required that it be filed within a reasonable time.  *Id.* at 222, 122 S. Ct. at 2139.  In applying AEDPA's "pending" requirement in the context of California's process, though, the Supreme Court found these distinctions unimportant, noting that California's process essentially functioned as the appeals procedures in other states, and commenting that AEDPA demands a certain measure of deference or protection to the states' postconviction processes.  *Id.* at 222-23, 122 S. Ct. at 2139-40.

The Supreme Court acknowledged, however, that California's indeterminate reasonableness standard could make it more difficult for a federal court to apply §

14

2244(d)'s tolling provisions. *Id.* at 223, 122 S. Ct. at 2139. The Court remanded Saffold's case to determine whether his delay was unreasonable. *Id.* at 225-227, 122 S. Ct. at 2141. But while it was unclear whether Saffold, specifically, had unreasonably delayed filing his petition, the Court observed that if the state court had clearly ruled that the delay was unreasonable, the petition would not have been pending, for purposes of AEDPA tolling, during the period between when the intermediate court denied Saffold's petition and he filed his original writ in the state supreme court. *Id.* at 225-26, 122 S. Ct. 2141.

Florida seizes on this last observation to argue that a prisoner's failure to comply with state procedural requirements after a dismissal can result in a petition's "pending" status being withdrawn prior to completion of an appeal. The state contends that Hernandez-Alberto's refusal to sign his petition after being found competent has an effect similar to the effect of a California prisoner's failing to file a writ with the state supreme court in a reasonable time: lack of compliance with the procedural requirement results in "pending" status being withdrawn.

Assuming for our purposes that Florida is correct that Hernandez-Alberto was required to sign his petition after being found competent, Florida's argument nevertheless goes astray because it conflates filing conditions with appellate procedural requirements. *Saffold* made clear that an application remains pending through completion of the state's collateral appeals process. *Id.* at 219-20, 122 S.

15

Ct. at 2138. *Saffold* suggests, at most, that if a prisoner fails to comply with appeal requirements, his petition may lose "pending" status for the period between when the lower court issued its decision and the higher court takes up or dismisses the appeal.

But the record in Hernandez-Alberto's case includes no indication that Hernandez-Alberto failed to satisfy any appellate procedural requirements in appealing the trial court's competency determination and its dismissal of his postconviction petition. Until the Florida trial court dismissed his petition with prejudice, Hernandez-Alberto could not appeal those issues and resolve his postconviction proceedings. *See, e.g.*, *Christner v. State*, 984 So. 2d 561, 562 (Fla. 2d DCA 2008) ("[A]n unfavorable ruling on one or more postconviction claims with leave to amend is not an appealable, final order."); *Howard v. State*, 976 So. 2d 635, 636 (Fla. 5th DCA 2008) (holding that denial of a postconviction motion without prejudice and with leave to amend is not a final, appealable order). And AEDPA insists that we respect these procedural realities. *See Saffold*, 536 U.S. at 222-23, 122 S. Ct. at 2139.

When the court finally dismissed Hernandez-Alberto's postconviction petition with prejudice in November 2010, Hernandez-Alberto timely appealed to the Florida Supreme Court, which considered his appeal on the merits. The postconviction process that began with his properly filed petition on March 13,

16

2006, was finally resolved with the issuance of the Florida Supreme Court's mandate on December 2, 2013. *See Lawrence*, 549 U.S. at 332, 127 S. Ct. at 1083. For purposes of AEDPA, Hernandez-Alberto's properly filed application was pending during this entire period. *Saffold*, 536 U.S. at 219-20, 122 S. Ct. at 2138.

## V.

In conclusion, Hernandez-Alberto's "properly filed application for State post-conviction or other collateral review" was pending from March 13, 2006, through December 2, 2013, tolling the deadline during this period for Hernandez-Alberto to file his federal habeas petition. As a result, Hernandez-Alberto's federal petition, filed on January 21, 2014, was timely filed under AEDPA, within one year of untolled time of his conviction having become final. Accordingly, the judgment of the district court finding his petition time-barred is REVERSED. This case is REMANDED to the district court for proceedings consistent with this opinion.